# Wytheville.

## FLANARY v. COMMONWEALTH.

### June 18, 1912.

#### Absent, Cardwell, J.

1. CRIMINAL LAW—*Self-Incrimination—Immunity from Prosecution.*—
Where the law gives to the witness full indemnity and assurance against
any liability to prosecution for a disclosure he can be called upon
to make as to his own implication or complicity in the unlawful act
as to which he is sworn and called upon to testify, he is bound to answer,
and cannot shield himself, under the provision of our Bill of Rights.
While there must be complete amnesty, yet, if the immunity afforded
be co-extensive with the constitutional privilege of silence, the witness
is bound to answer.

2. CRIMINAL LAW—*Self-Incrimination of Witness—Proceedings Before
Grand Jury—Indemnity of Witness.*—Where a statute provides that
"no witness giving evidence in any prosecution, or other proceeding
under this act, shall ever be proceeded against for any offense against
this act," if a witness is called upon to testify before a grand jury in
any proceeding before that body, although there may be no indictment,
presentment, or information, but merely an inquiry by the grand jury,
instituted by the grand jury itself, as to violations of the act, the witness
is entitled to invoke the benefit of the statute which shields him from
prosecution. The inquiry before the grand jury is a "proceeding"
within the meaning of the act.

3. CRIMINAL LAW—*Election Frauds—Receiving Bribes—Self-Incrimination
of Witness—Indemnity.*—On the trial of an indictment, under section
3853 of the Code, against a voter for receiving a bribe, a witness who is
asked to testify as to his knowledge of any violation of any clause of
section 145a of the Code and the amendments thereof (Barksdale
Pure Election Law), and of any other election laws, is entitled to the
immunity afforded by clause 9 of the last-mentioned section, declaring
that "no witness giving evidence in any prosecution or other proceeding
under this act shall ever be proceeded against for any offense against
this act, or against the other election laws, committed by him at or
in connection with the same election." The immunity is as complete
with respect to offenses against other election laws as it is with respect
to an offense against the particular act within the terms of which the

immunity is found. The indemnity afforded the witness is complete, and a compulsory answer to questions touching the violation of the election laws does not violate the constitutional guaranty against self-incrimination.

Error to a judgment of the Circuit Court of Lee county.

*Affirmed.*

*J. C. Noel, J. W. Orr,* and *M. G. Ely,* for the plaintiff in error.

*Samuel W. Williams, Attorney General, E. E. Skaggs,* and *E. W. Pennington,* for the Commonwealth.

KEITH, P., delivered the opinion of the court.

Dock Burchett was indicted in the Circuit Court of Lee county, at its December term, 1911, for unlawfully and corruptly receiving from C. R. Flanary $40.00, under an agreement with him that he, the said Dock Burchett, would vote for J. D. Edds, candidate for clerk, and other candidates in said election, against the peace and dignity of the Commonwealth. To this indictment Burchett pleaded not guilty; whereupon a jury was sworn to try the issue, and the Commonwealth placed upon the stand C. R. Flanary, and asked him certain questions connected with and relating to the offense charged in the indictment, which the witness refused to answer, because, as he stated, to answer any of the said questions would either incriminate or tend to incriminate himself; and thereupon the court adjudged the witness to be in contempt of court, and assessed against him a fine of twenty-five dollars for said alleged contempt, to which judgment Flanary obtained a writ of error.

The petitioner contends that the judgment of the circuit court violates section 8 of the Bill of Rights, Article I. of the Constitution, which declares that no man shall be "compelled in any criminal proceeding to give evidence against himself"; that the privilege guaranteed by this constitutional provision relates to the personal liberty of the citizen, and it is now a generally accepted principle that such constitutional provisions should be

liberally construed and given full force, or the intent thereof will be unavailing; that being compelled to answer said questions the petitioner would have been deprived of this constitutional right, guaranteed to him by both the Constitution of the United States and the Constitution of Virginia, as construed by this court in the cases of *Cullen* v. *Commonwealth*, 24 Gratt. (65 Va.) 624; *Temple* v. *Commonwealth*, 75 Va. 892; and *Kendrick* v. *Commonwealth*, 78 Va. 490.

In *Cullen's Case, supra,* the court said: "By the eighth section of the Bill of Rights of Virginia a person is not only secured against giving evidence against himself on his own trial, but he cannot be required, on the trial of another, to testify, if his evidence will tend to criminate himself"; and that "even if a person might be required to give evidence on the trial of another which might tend to criminate himself, if the statute afforded him a complete indemnity, by discharging him from all prosecution for the offense (of which *quaere?*), the act of October 7, 1870, amending sec. 1, ch. 12, of the Code of 1860, does not afford that indemnity; and, therefore, in requiring any person engaged in a duel to testify against another prosecuted for having fought such duel is unconstitutional." It appears from that case that the point decided by the court was that the statute, which it was claimed afforded indemnity to the accused, and by virtue of which he was adjudged guilty in the Hustings Court of the city of Richmond for refusing to testify, was held not to afford a sufficient indemnity against prosecution, and the question was left undecided as to whether or not it was in the power of the legislature to afford him a complete indemnity by discharging him from all prosecution for the offense.

In *Temple's Case, supra,* one Berry was indicted for setting up and promoting a lottery, and Temple was called by the Commonwealth as a witness. He refused to testify, upon the ground that his answers might tend to incriminate him; but the Commonwealth, relying upon ch. 195, sec. 20, of the Code of 1873, as affording the witness indemnity from prosecution, a fine was imposed upon the witness, who brought the case to this court, where it was held that the section of the Code relied upon, "which provides that a witness giving evidence in a prosecution for unlawful gaming shall never be proceeded against for any offense

98

of unlawful gaming committed by him at the time and place , indicated in such prosecution, does not apply to a prosecution for managing and conducting a lottery; and a witness cannot be required to testify in such a case if he will thereby criminate himself." In that case the opinion was delivered by Judge Christian, and Judge Staples delivered an opinion concurring in that of Judge Christian, that the "indemnity afforded the witness in prosecutions for gaming by the 20th section of chapter 195, Code of 1873, is not extended to witnesses in prosecutions for violation of the laws against lottery dealing. Upon that ground I think the witness in this case would not be compelled. to answer the question asked him by the attorney for the Commonwealth."

Continuing, the judge said: "If this were a prosecution for unlawful gaming, as defined by our statutes, I think the witness. would be bound to testify, for he is fully protected by the very provisions of the 20th section already adverted to. It is very true I concurred with the majority of the court in *Cullen's Case*, 24 Gratt. 624, but the question whether the legislature may not. compel the witness to answer, by affording him ample indemnity,. was left undecided in that case. I wish further to say that sub- sequent reflection has led me to entertain considerable doubt of the correctness of a good deal that was said in *Cullen's Case*,. and, if the occasion occurs, I feel myself at liberty to reconsider the whole subject."

In *Kendrick* v. *Commonwealth*, 78 Va. 490, Kendrick was sworn. and sent to the grand jury to testify as to a charge against Lyon of unlawful gaming, and refused to answer questions propounded by the grand jury, because the answer would tend to criminate and disgrace him. A majority of the court held (Judge Fauntleroy delivering the opinion) that sections 20 and 22, page 51, ch. 10,. Acts 1877–78, New Criminal Procedure, "secures full protection to witnesses testifying in prosecutions for unlawful gaming, and Kendrick is not justified in refusing to testify on the ground that his answer will tend to criminate and disgrace him."

The statute under which indemnity in that case was asserted enacts that "no person prosecuted for unlawful gaming shall be competent to testify against a witness for the Commonwealth

in such prosecution touching any unlawful gaming committed by him prior to the commencement of such prosecution; nor shall any witness, giving evidence either before the grand jury or the court in such prosecution, be ever proceeded against for any offense of unlawful gaming committed by him at the time and place indicated in such prosecution; but such witness shall be compelled to testify, and, for refusing to answer questions, may, by the court, be fined a sum not exceeding five hundred dollars and be imprisoned for a term not exceeding six months"; and by the 22d section of the same act it is provided that "in a criminal prosecution, other than for perjury, or an action on a penal statute, evidence shall not be given against the accused of any statement made by him as a witness upon a legal examination." `

The court was of opinion that these provisions of the law "give to the witness full indemnity and assurance against any liability to prosecution for a disclosure which he could be called upon to make as to his own implication or complicity in the unlawful gaming as to which he was sworn and sent to the grand jury to testify; it was the duty of the witness to testify, and, therefore, we do not think the hustings court erred in its judgment complained of."

In *State of Kansas* v. *Jack*, 69 Kan. 387, 76 Pac. 911, annotated in 1 L. R. A. (N. S.) 167, it was held that the exemption provided by the Bill of Rights, that "no person shall be a witness against himself," cannot be claimed by a witness when, by the terms of a statute, the immunity afforded is co-extensive with the constitutional privilege of silence.

In *Hale* v. *Henkel*, 201 U. S. 43, 50 L. Ed. 652, 26 Sup. Ct. 370, which construes Art. 5 of the Amendments to the Constitution of the United States, which is, in effect, identical with the provision in the Virginia Bill of Rights, it was held that "The right of a witness to claim his privilege against self-incrimination, afforded by U. S. Const., 5th Amend., when examined concerning an alleged violation of the anti-trust act of July 2, 1890, is taken away by the proviso to the act of February 25, 1903, that no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence in any

proceeding, suit, or prosecution under certain named statutes, of which the anti-trust act is one, which furnishes a sufficient immunity from prosecution to satisfy the constitutional guaranty."

In a note to *State* v. *Jack, supra,* very many authorities are collated, as a result of which it seems to be established that "before the constitutional privilege of silence could be taken away by the legislature, there must be absolute indemnity provided; that nothing short of a complete amnesty to the witness—an absolute wiping out of the offense, so that he could no longer be prosecuted for it—would furnish that indemnity; and that a provision merely that the testimony of a witness should not be used in evidence against him did not secure such absolute immunity."

The law was so declared in *Counselman* v. *Hitchcock,* 142 U. S. 547, 35 L. Ed. 1110, 12 Sup. Ct. 195, where it was decided that nothing short of absolute immunity from prosecution could satisfy the constitutional guaranty, and that a statute declaring that no evidence obtained from a witness should be given in evidence, or in any manner used against him or his property or estate, in any court of the United States, in any criminal proceeding, or for the enforcement of any penalty or forfeiture, did not supply a complete protection from all the perils which the constitutional guaranty was designed to guard, since it would not prevent the use of his testimony to search out other testimony to be used against him or his property.

In *Brown* v. *Walker,* 161 U. S. 591, 40 L. Ed. 819, 16 Sup. Ct. 644, it was held that exempting a witness from any prosecution, or any penalty or forfeiture, on account of any transaction to which he may testify, sufficiently satisfies the guaranty against self-incrimination. The court further said that the fact that a witness cannot be shielded from the personal disgrace attaching to the exposure of his crime does not render a statute exempting him from prosecution therefor unconstitutional.

We consider it, therefore, as established, that the case of *Kendrick* v. *Commonwealth, supra,* was correctly decided, and that where the law gives to the witness full indemnity and assurance against any liability to prosecution for a disclosure which he could be called upon to make as to his own implication or com-

plicity in the unlawful act as to which he was sworn and sent to the grand jury to testify, he is bound to answer, and cannot shield himself under the provision of our Bill of Rights.

It remains to consider whether or not the provisions of our statute do give to the witness that immunity from prosecution which he is entitled to demand before being called upon to answer a question which may tend to incriminate himself.

Section 145a of the Code, commonly known as the "Barksdale Pure Election Law," provides that no candidate "shall expend, pay, promise, loan, or become pecuniarily liable in any way for any money or other valuable thing to influence voters in his behalf, or permit the same to be so used, with his knowledge and consent, by his friends or adherents, in any election, primary, or nominating convention; provided, however, that no expenditure made by any candidate or his adherents and friends, for the purpose of printing or advertising in some newspapers, or in securing suitable halls for public speaking, at a reasonable price, shall be deemed illegal."

It will be observed that section 145a is directed against the giver of the bribe, and the indemnity afforded the person who testifies as to a matter which may incriminate him is found in clause 9 of section 145a, as amended, which now reads as follows: "No witness giving evidence in any prosecution, or other proceeding under this act, shall ever be proceeded against for any offense against this act, or against the other election laws, committed by him at or in connection with the same election."

The prosecution of Burchett was under section 3853 of the Code, which, by its own terms, affords no immunity, and reads as follows: "If any person, directly or indirectly, give to a voter in any election any money, goods, or chattels, under an agreement, express or implied, that such voter shall give his vote for a particular candidate, or for or against any question voted on at any such election, such person shall be fined not less than one hundred dollars nor more than one thousand dollars, or confined in jail not less than one nor more than twelve months. And the voter receiving such money, goods, or chattels, in pursuance of such agreement, shall be punished in like manner with the person giving the same."

It was, therefore, properly conceded in argument by counsel for the Commonwealth that the conviction of Flanary could not be maintained unless he had been called upon to testify under section 145a, and was thereby brought under the protection of the immunity afforded by section 9 of that act.

When Flanary was put upon the stand he was asked, as has already been stated, a number of questions, which are copied into the record, among them question 6, which is as follows: "After said election in said county, were you sent as a witness before the grand jury of Lee county, at the December term, 1911, of the circuit court of said county, to give evidence before said grand jury touching the violation of any clause or part of section 145a of the Code of Virginia for 1904, as amended by the acts of the General Assembly of Virginia of 1908, and in force June 26, 1908, and also touching the violation of any other election laws?" To which question the witness answered: "Yes, I was before the grand jury at the December term, 1911, of said court, and then and there testified concerning breaches of the election law. I was compelled to testify before said grand jury by the court, because, as I understood it, if I refused to testify the court would have fined or imprisoned me for contempt."

The question, in terms, embraces an inquiry into the violation of any clause or part of section 145a of the Code of Virginiaa of 1904. That is the specific point of inquiry, and it was then added, "and also touching the violation of any other election laws." The answer of the witness was, "Yes, I was before the grand jury at the December term, 1911, of said court, and then and there testified concerning breaches of the election law." Of what election law? The specific inquiry of the question was as to section 145a of the Code of 1904, as amended by the acts of the General Assembly of Virginia of 1908; and the categorical answer of the witness is, "Yes, I was before the grand jury at the December term, 1911, of said court, and then and there testified concerning breaches of the election law." If there could be any doubt as to what election law was referred to by the witness' answer, it would arise rather with respect to the inquiry as to other election laws than section 145a, which is specifically mentioned; but we think it is manifest from the question asked and from the

answer given that the witness did not intend any such discrimination, but plainly intended by his answer to state that he was examined as to section 145a and also touching the violation of other election laws—as, for instance, section 3853 of the Code.

It is true that it does not appear that the investigation as to violation of section 145a resulted in any indictment, presentment, or information. The grand jury was exercising its functions as an inquisitorial body, and searching, as it was its duty to do, into any and all violations of criminal laws of the Commonwealth, and especially those pertaining to the election laws. In the course of that inquiry, and within the strict limits of its duty, if Flanary was put upon the witness stand, and interrogated as to the giving of bribes, within the purview of section 145a, it matters not that the facts elicited by the grand jury did not culminate in any prosecution under that statute. It is the scope and extent of the inquiry, and not the use which was subsequently made of the information thus elicited, with which we are concerned, and which is to determine whether or not the witness was brought within the terms of the immunity embraced in clause 9 of section 145a.

In *Hale* v. *Henkel, supra,* it is said that the examination of the witness before the grand jury need not be preceded by a presentment, indictment, or other formal charge; that in the summoning of witnesses before a grand jury it is sufficient to apprise them of the names of the parties with respect to whom they will be called upon to testify, without indicating the nature of the charge against such persons." Mr. Justice Brown, in delivering the opinion, uses the following language: "We are pointed to no case holding that a grand jury cannot proceed without the formality of a written charge. Indeed, the oath administered to the foreman, which has come down to us from the most ancient times, and is found in *Shaftesbury's Trial,* 8 How. St. Tr. 769, indicates that the grand jury was competent to act solely on its own volition. This oath was that 'you shall diligently inquire and true presentments make of all such matters, articles, and things as shall be given you in charge, as of all other matters and things as shall come to your own knowledge touching this present service,' etc. This oath has remained substantially

unchanged to the present day.  *  *  *  While no case has arisen in this court in which the question has been distinctly presented, the authorities in the State courts largely preponderate in favor of the theory that the grand jury may act upon information received by them from the examination of witnesses, without a formal indictment, or other charge, previously laid before them."

In *Hale* v. *Henkel, supra,* it was suggested that a person who has testified compulsorily before a grand jury may not be able, if subsequently indicted for some matter concerning which he testified, to procure the evidence necessary to maintain his plea, but that suggestion the court deemed to be more fanciful than real. "He would have not only his own oath in support of his immunity, but the notes often, though not always, taken of the testimony before the grand jury, as well as the testimony of the prosecuting officer, and of every member of the jury present. It is scarcely possible that all of them would have forgotten the general nature of his incriminating testimony, or that any serious conflict would arise therefrom. In any event, it is a question relating to the weight of the testimony, which could scarcely be considered in determining the effect of the immunity statute. The difficulty of maintaining a case upon the available evidence is a danger which the law does not recognize. In prosecuting a case, or in setting up a defense, the law takes no account of the practical difficulty which either party may have in procuring his testimony. It judges of the law by the facts which each party claims, and not by what he may ultimately establish."

In the case before us the difficulty suggested does not arise, for the witness himself proves that he was examined touching the matter from which his immunity from prosecution is held to flow.

As to the inquisitorial power of a grand jury, we refer to what was said by this court in the recent case *Cutchin* v. *Roanoke, ante,* p. 452, 74 S. E. 403.

We have thus far concluded that it is within the power of the legislature to compel a witness to answer incriminating questions, if he is by law completely protected against any prosecution touching the matter with respect to which he is interrogated; secondly, that Flanary was, in this case, questioned with respect

to the violation of section 145a, and thereby became entitled to whatever immunity is afforded by the ninth clause of that section; and it only remains for us to consider whether that be sufficient to afford him that complete immunity from prosecution to wh ch we are of opinion that he is entitled.

The language of the immunity clause is, "No witness giving evidence in any prosecution, or other proceeding under this act, shall ever be proceeded against for any offense against this act, or against the other election laws, committed by him at or in connection with the same election."

Turning again to *Hale* v. *Henkel, supra,* we find that the United States statute there under consideration provides that "no person shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing, concerning which he may testify or produce evidence, documentary or otherwise, in any proceeding, suit, or prosecution under said acts," of which the anti-trust statute is one. It will be observed that this act uses the term "proceeding," just as the act under consideration does, and Mr. Justice Brown, with reference to it, speaks as follows: "While there may be some doubt whether the examination of witnesses before a grand jury is a suit or prosecution, we have no doubt that it is a 'proceeding' within the meaning of this proviso. The word should receive as wide a construction as is necessary to protect the witness in his disclosures, whenever such disclosures are made in pursuance of a judicial inquiry, whether such inquiry be instituted by a grand jury or upon the trial of an indictment found by them. The word 'proceeding' is not a technical one, and is aptly used by the courts to designate an inquiry before a grand jury. It has received this interpretation in a number of cases.

"The object of the amendment is to establish, in express language and upon a firm basis, the general principle of English and American jurisprudence, that no one shall be compelled to give testimony which may expose him to prosecution for crime. It is not declared that he may not be compelled to testify to facts which may impair his reputation for probity, or even tend to disgrace him; but the line is drawn at testimony that may expose him to prosecution. If the testimony relate to criminal acts

99

long since past, and against the prosecution of which the statute of limitations has run, or for which he has already received a pardon or is guaranteed an immunity, the amendment does not apply."

We have the very high authority, therefore, of the Supreme Court of the United States, that if a witness has been called upon to testify before a grand jury in any proceeding before that body, although there may be no indictment, presentment, or information, but merely an inquiry instituted by the grand jury itself, the witness is entitled to invoke the benefits of the laws which shield him from prosecution.

In this case the witness, having testified under section 145a, by the terms of clause 9, can never be proceeded against for offenses against that act, "or against the other election laws, committed by him at or in connection with the same election." The immunity is as complete with respect to offenses against other election laws as it is with respect to an offense against the particular act within the terms of which the immunity is found.

We conclude, therefore, to use the language of the court in *Kansas* v. *Jack, supra,* that by the terms of our statute the immunity afforded is co-extensive with the constitutional privilege of silence; from which it follows that the judgment of the circuit court must be affirmed.

*Affirmed.*