**Richmond**

MICHAEL LARRY FARMER

v.

COMMONWEALTH OF VIRGINIA

No. 0532-88-2

Decided April 23, 1991

Counsel

Michael J. Barbour (Gilmer, Sadler, Ingram, Sutherland & Hutton, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

## UPON REHEARING EN BANC

Opinion

**MOON, J.**—We granted a rehearing en banc to the Commonwealth after a panel of this Court reversed Michael Larry Farmer's driving under the influence conviction. *See Farmer v. Commonwealth*, 10 Va. App. 175, 390 S.E.2d 775 (1990). Farmer contends that the trial court erred in admitting evidence of his prior DUI convictions and admitting evidence of his refusal to perform a field sobriety test. We hold that the trial court did not

err in admitting appellant's prior DUI convictions and that the admission of Farmer's refusal to perform a field sobriety test did not violate either the United States or Virginia Constitutions.

On the night of August 2, 1986, a Pulaski County sheriff's deputy, while on patrol in his vehicle, passed an automobile headed in the opposite direction. The officer recognized the driver of the vehicle as the appellant, Farmer. The officer knew that the appellant's driver's license had been suspended. The officer turned around and proceeded after the vehicle. The vehicle sped up as it was being followed by the deputy. When the deputy closed to within one-half block, the car made a quick turn into a closed gas station parking lot. The deputy pulled within seventy feet of the vehicle and saw no one leave the car. The officer saw motion in the car moving toward the back seat. When the officer approached the car he found Farmer lying down in the back seat behind the driver's seat with no one at the wheel. There was another person in the right front passenger seat.

When the officer asked Farmer to step out of the car, Farmer replied, "to hell with you sons-of-bitches, I ain't coming out of this car. I wasn't driving this car. A black guy jumped out and ran with the car keys."

After getting Farmer out of the car, the police officer detected a strong odor of alcohol about Farmer and noticed Farmer was unsteady on his feet, belligerent and abusive toward him. Additionally, Farmer's speech was slurred and his eyes were glassy and watery. When asked to perform a field sobriety test, Farmer replied, "I ain't doing a Goddamn thing for you, you sons-of-bitches, you are always out here f_____g with everybody."

The keys were not found in the ignition. After the car had been towed, Farmer's mother attempted to retrieve the car. Because she had no keys, she called the jail and was able to obtain from the deputy sheriff a key from Farmer's personal property.

Farmer testified that he had been to a "beer joint" from 6:00 or 7:00 p.m. until it closed at 11:45 p.m. He admitted that he consumed six or seven beers during this period. He claimed that he found a black man, Anthony Redd, to drive him home. After starting the ride home, Farmer claimed to have had to wait an hour and a half to two hours outside a community center while

Mr. Redd met a woman. Farmer admitted to drinking about three more beers while he was waiting.

With regard to the admission of his prior DUI conviction, Farmer contends that under Code § 46.1-347.2 (now Code § 46.2-943), he was entitled to a bifurcated trial in which his prior convictions would not be introduced until after a finding of guilt. For the reasons stated in the panel's decision, we hold "that evidence of prior DUI convictions does not constitute the 'traffic record' as contemplated by Code § 46.2-943 where the offense charged under Code § 18.2-266 is a subsequent offense of DUI punishable under Code § 18.2-270." 10 Va. App. at 181, 390 S.E.2d at 777. We further hold "that proof of such charge requires proof of prior DUI convictions. For these reasons, the trial court did not err in admitting evidence of Farmer's prior DUI convictions independent of his prior traffic record during the guilt stage of the trial." *Id*.

Farmer contends that the admission of his refusal to take the field sobriety test violated his constitutional rights because it placed him in a position in which he had to participate in the test or bear the risk that his failure to do so might raise an inference of guilt. Under both the Fifth Amendment of the United States Constitution and Article I, § 8 of the Virginia Constitution, a criminal defendant cannot be compelled to give testimony against himself. The privilege against compelled testimony under Article I, § 8 of the Virginia Constitution is no broader in its application than its counterpart under the federal Constitution. The Virginia Supreme Court has held that provisions of the Fifth Amendment of the United States Constitution, are, "in effect, identical with the provision in the Virginia Bill of Rights." *Flanary v. Commonwealth*, 113 Va. 775, 779, 75 S.E. 289, 291 (1912); *see Walton v. City of Roanoke*, 204 Va. 678, 682, 133 S.E.2d 315, 318 (1963) (faced with the argument that the Virginia Constitution provides greater protection against compelled testimony than the Federal Constitution, the Court stated: "[w]e consider these clauses to be identical in their application here"). Therefore, we find precedent interpreting the Fifth Amendment right against self-incrimination equally applicable to the challenges made under Article I, § 8 of the Virginia Constitution.

The privilege against self-incrimination "protects an accused only from being compelled to testify against himself, or oth-

erwise provide the State with evidence of a testimonial or communicative nature." *Schmerber v. California*, 384 U.S. 757, 761 (1966). "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information." *Doe v. United States*, 487 U.S. 201, 210 (1988). In *Schmerber*, the Supreme Court stated that the Fifth Amendment "offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." 384 U.S. at 764. "[T]he fact of the refusal to perform tests that do not themselves constitute communicative or testimonial evidence is equally non-communicative and non-testimonial in nature." *State v. Hoenscheid*, 374 N.W.2d 128, 130 (S.D. 1985).

In *Gardner v. Commonwealth*, 195 Va. 945, 81 S.E.2d 614 (1954), the Virginia Supreme Court found no violation of the state constitution in admitting evidence of a refusal to take a blood test since the act of refusal was not compelled. The Supreme Court of the United States has held that evidence of the results of a blood test or the refusal to take that test involves neither testimony nor compulsion forbidden under the provisions of the Fifth Amendment. *South Dakota v. Neville*, 459 U.S. 553, 564 (1983); *see Pennsylvania v. Muniz*, 496 U.S. 582, 604 n.19 (1990). We see no reason to distinguish between a refusal to submit to a blood test and the act of refusing to submit to a field sobriety test for purposes of what constitutes testimony or compulsion. In either case, the incriminating inference is drawn not from the testimonial act of the accused but from the physical act of the suspect. Asking a suspect to submit to a field sobriety test does not place the suspect in the "cruel trilemma" of self-accusation, perjury or contempt. *See Pennsylvania v. Muniz*, 496 U.S. at 596.

■ We, therefore, hold that neither the Fifth Amendment nor Article I, § 8 of the Virginia Constitution was violated by the admission into evidence of the fact of Farmer's refusal to take a field sobriety test.

Accordingly, the judgment appealed from is affirmed.[1]

*Affirmed.*

Baker, J., Barrow, J., Cole, J., Coleman, J., and Keenan, J., concurred.

Koontz, C.J., joined by Benton, J., concurring in part and dissenting in part.

I concur with the majority's holding that the trial court did not err in admitting evidence of Farmer's prior DUI convictions independent of his prior traffic record during the guilt stage of his trial for DUI.

I respectfully dissent from the majority's holding that evidence of Farmer's refusal to take a field sobriety test was admissible at that trial. In doing so, I readily concede that I am persuaded by an apparent minority view on this issue as expressed in *State v. Green*, 68 Or. App. 518, 684 P.2d 575, *overruled on other grounds, State v. Panichello*, 71 Or. App. 519, 692 P.2d 720 (1984). In my view, evidence of a refusal to take a field sobriety test is testimonial or communicative evidence and is inadmissible evidence because it is compelled by the Commonwealth. I believe the majority fails to address the effect of the statutory scheme concerning driving under the influence of alcohol in assessing the degree to which Farmer was compelled to give evidence against himself. That failure necessarily leads it to an unwarranted conclusion.

In Virginia, as in most if not all of our sister states, our legislature has enacted a detailed statutory scheme prohibiting driving while under the influence of alcohol (DUI) and providing for the procedures which are to be followed in the prosecution of violations of that prohibition. *See* Code §§ 18.2-266 *et seq.* Based on the theory of implied consent, that statutory scheme provides for the use of chemical tests to determine the alcoholic content of the accused's blood or breath. In addition and pertinent to the present appeal, that statutory scheme provides specific choices and protections to the accused concerning the use of the results of these tests

---

[1] The panel which originally considered this case affirmed the appellant's conviction of driving after having been declared an habitual offender. That decision is not affected by this opinion.

or the accused's refusal to submit to chemical tests in the accused's trial for DUI. Specific provisions of Virginia's statutory scheme differ from many other states in this latter regard.

Code § 18.2-267 provides for a preliminary breath test of any person suspected by the police of driving under the influence of alcohol. This Code section further provides that the suspected person shall have the "right to refuse to permit his breath to be . . . analyzed, and [that] his failure to permit such analysis shall not be evidence" against him. Code § 18.2-267(C). The stated "purpose of this section is to permit a preliminary analysis of the alcoholic content of the blood of a person suspected of having violated the provisions of § 18.2-266." Code § 18.2-267(E). In short, this Code section provides a mechanism to resolve a potential on-the-scene dispute between the police and the accused concerning the alcoholic content of the blood of the accused. It is, however, a purely voluntary mechanism and no penalties attach to a refusal to submit to these tests.

Regardless of a refusal under Code § 18.2-267, Code § 18.2-268(B) provides that one who operates a motor vehicle on a public highway in this Commonwealth is deemed to have consented to chemical testing to determine the alcohol content of his blood. Code § 18.2-268(E) provides that the accused may refuse to submit to chemical testing. This Code section also provides that the accused must be advised that the unreasonable refusal constitutes grounds for the revocation of the privilege of operating a motor vehicle upon the highways of this Commonwealth. Subsequent paragraphs of this Code section provide detailed provisions to ensure that the accused understands that an *unreasonable* refusal to submit to the chemical test constitutes grounds for revocation of such person's license to drive and for a separate trial on the reasonableness of that refusal. In the event of a refusal, Code § 18.2-268(T) provides the specific period of suspension of the accused's driver's license upon a determination that the refusal was unreasonable. Code § 18.2-268(O), however, provides that "[t]he failure of an accused to permit a sample of his blood or breath to be taken for a chemical test . . . is not evidence and shall not be subject to comment by the Commonwealth at the trial of [the driving under the influence charge], except in rebuttal." Thus, our legislature has enacted a statutory scheme which provides for a voluntary chemical test to determine the blood alcohol content of

a person accused of DUI. Moreover, pertinent to the present appeal, our legislature has provided for a clear choice by one so accused. He may choose to take the chemical test or he may refuse to do so. If he refuses to take the chemical test, evidence of his refusal is not admissible against him at his trial for DUI. At the separate trial for the refusal, the Commonwealth must prove that the refusal was unreasonable. Viewed in this context, an accused is given a true choice regarding the decision to take the chemical test or to refuse to do so. Moreover, by the explicit language of the statute, the accused's refusal to allow the taking of a blood or breath sample "is not evidence." Thus, our statutory law protects an accused from being compelled to give evidence against himself, and provides a protection that exceeds the parameters of *Schmerber v. California*, 384 U.S. 757 (1966), and *State v. Hoenscheid*, 374 N.W.2d 128 (S.D. 1985).

The Virginia statutory scheme described above is completely consistent with the United States Supreme Court holding in *South Dakota v. Neville*, 459 U.S. 553 (1983). In *Neville*, following its prior decision in *Schmerber v. California*, 384 U.S. 757 (1966), holding that an accused could be forced to undergo a blood-alcohol test without violating his fifth amendment right against self-incrimination because the test results did not involve testimonial compulsion upon or enforced communication by the accused, the Supreme Court held that the refusal to take a test which is statutorily authorized by state law does not involve unconstitutional compulsion under the fifth amendment. The holding in *Neville*, however, is not dispositive of the issue presented by Farmer's appeal. By statute in Virginia the refusal to take a blood test is not admissible in evidence at an accused's trial for DUI. Thus, by our statutory scheme neither a federal or state constitutional issue is presented in such cases.

More importantly, in *Neville*, the United States Supreme Court did not hold that a refusal to take a blood test is non-communicative or non-testimonial. Thus, the majority's reliance on *State v. Hoenscheid*, 374 N.W.2d 128, 130 (S.D. 1985), wherein the South Dakota Supreme Court, without explanation except for an apparently misplaced reliance on the *Neville* holding, unnecessarily changed its position and held that refusals to take tests are non-communicative and non-testimonial evidence is not persuasive. Similarly, the majority's determination that the Virginia

Constitution is no broader than the United States Constitution in this instance does not mandate or warrant the determination that a refusal to take a field sobriety test is non-communicative or non-compelled evidence. Rather, in my view, the United States Supreme Court in *Neville* did not decide the precise issue presented by Farmer's appeal. Nor has the Virginia Supreme Court decided this issue. The majority relies upon *Gardner v. Commonwealth*, 195 Va. 945, 81 S.E.2d 614 (1954), for authority that there is no violation of our state constitution in admitting evidence of a refusal to take a blood test since the refusal is not compelled. While I believe that *Gardner* is also not on point for other reasons, in my view, *Gardner* is not applicable to the issue of a refusal to take a field sobriety test because, unlike the statutorily authorized blood test and the statutory scheme which removes the element of compulsion for submitting to such tests, there is no similar statutory scheme for field sobriety tests. Thus, the issue in this appeal is not whether the Virginia Constitution provides a greater protection than the Federal Constitution's Fifth Amendment. If I conveyed anything to the contrary in writing for a majority of the panel in *Farmer v. Commonwealth*, 10 Va. App. 175, 390 S.E.2d 775 (1990), I take this opportunity to clarify my position.

Assuming that as applied to the issue in this appeal the provisions of the Fifth Amendment of the United States Constitution and the provisions of Article I, § 8 of the Virginia Constitution are identical, our constitution remains an independent and viable document. Because in my view the precise issue in Farmer's appeal has not been resolved by the United States Supreme Court or the Virginia Supreme Court, I look to our constitution to resolve this appeal.

Article I, § 8 of the Virginia Constitution provides, in pertinent part, that an accused may not "be compelled in any criminal proceeding to give evidence against himself." To come within the purview of this constitutional protection the disputed evidence must be both *testimonial or communicative and compelled* by the Commonwealth. The majority draws no distinction between the *results* of field sobriety tests and a *refusal* to take such tests. In my view that distinction is critical to the issue in this appeal.

While there is no statutory authority in Virginia for police administration of field sobriety tests and accordingly, there are no "standardized" field sobriety tests in this state, such tests are fre-

quently administered by law enforcement officers in this state to make a preliminary determination of the condition of a suspected driver. Similarly, there is no statutory requirement that a driver take such tests either before or after arrest for violation of Code § 18.2-266. As a general proposition, these field sobriety tests are primarily dexterity tests which are a measure of loss of coordination or balance generally accepted to result from intoxication. Thus, the results of such tests are generally considered "real or physical" evidence because they do not force or involve communication or testimony by the accused of his subjective thoughts or knowledge concerning the degree or lack of intoxication. I agree with the majority that such evidence does not invoke a constitutional issue.

The *refusal* to submit to a field sobriety test in Virginia is another matter. The *refusal* to submit to such tests conveys the accused's thoughts or knowledge concerning the accusation that he is intoxicated. "[T]he expression of the contents of an individual's mind is testimonial communication." *Doe v. United States*, 487 U.S. 201, 210 n.9 (1988). Evidence of a refusal to take the field sobriety test would not be relevant unless it tended to prove some material fact in issue.

> Evidence of a defendant's refusal is relevant in that it shows that he believed that the results of the test would tend to incriminate him and thus shows that he believed that he was guilty. Specifically, the state wants the jury to infer, from the fact of a defendant's refusal, that he is saying, "I will not take the field sobriety tests because I believe I will fail them." The evidence is therefore conduct communicating the defendant's state of mind; it is, in essence, testimony concerning the defendant's belief on the central issue of the case.

*State v. Green*, 68 Or. App. at 522-23, 684 P.2d at 577.

A conclusion that a refusal to take a field sobriety test is communicative or testimonial evidence is only the first step in the necessary analysis for a determination of the admissibility of such evidence for purposes of Article I, § 8 of the Virginia Constitution. In order to be admissible such evidence must have been compelled by the Commonwealth. If the accused is provided a choice, the evidence he provides is not compelled for constitutional purposes. In my view, Farmer was not provided a choice.

As previously pointed out above, in Virginia, by statute, Farmer had "impliedly consented" to submit to a blood or breath test as a condition to his privilege to operate a motor vehicle in this Commonwealth. In addition, our legislature has provided that he could refuse to submit to such tests. Our legislature, unlike many other states, has provided that the refusal to submit to such tests shall not be admissible evidence in the accused's trial for driving while intoxicated. Rather, our legislature has provided a condition that an unreasonable refusal to submit to such tests shall be grounds for a suspension of the accused's driver's license. This condition is clearly limited to those cases where the accused is warned of the consequences of his refusal and the accused is granted a separate trial on the issue of the reasonableness of his refusal. It is true that an unreasonable refusal to submit to a blood or breath test will result in the revocation of one's driving privilege and, to that extent, a "penalty" is attached to the "act" of refusal. The Commonwealth, by extracting a "penalty" is not "compelling" testimonial communications since to impose the "penalty" it is not relying on the "testimonial" content of the refusal. The "act" of an unreasonable refusal, without more, is sufficient to result in a loss of driving privileges. No inference as to the content of the driver's state of mind is necessary to impose the sanction. Moreover, in this context an accused is given a true choice of refusing to submit to these chemical tests.

In contrast, our legislature has not provided for an "implied consent" to submit to field sobriety tests, nor has it prohibited the use of such tests. Consequently, our legislature has obviously not provided for any right to refuse to submit to such tests or any penalty for doing so. Thus, when Officer Hoback requested that Farmer take the field sobriety tests, he could not statutorily require him to do so. There was no practical way Officer Hoback could compel cooperation with a dexterity test. In short, Officer Hoback could request cooperation and no more. For his part, Farmer had the option of complying with Officer Hoback's request or refusing. Either option would result in Farmer giving evidence. If he voluntarily submitted to the tests the results would be admissible against him at his trial for DUI because he was not compelled to provide that evidence. His refusal to submit to the test, however, is compelled because the Commonwealth has provided no choice in exercising his option not to submit to the test. Farmer was not refusing to provide statutorily required non-com-

municative evidence such as the results of a blood test. He was simply refusing to provide evidence that was not statutorily required. Thus, as the Court stated in *Green*:

> Because [Farmer] had no obligation to take the test, there could also be no conditions placed on his refusal. Use of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of [Farmer's] refusal to provide non-communicative evidence to which it also had no right. The situation is thus a true Hobson's Choice.

68 Or. App. at 526, 684 P.2d at 579.

For these reasons I would hold that the evidentiary use of Farmer's refusal to take the field sobriety tests violates the protection of Article I, § 8 of the Virginia Constitution and therefore was not admissible at his trial for DUI. Because the admission of that evidence was not harmless error, I would reverse this conviction and remand this case for a new trial.

Finally, while I have not been able to persuade the majority from its view in this case, I dissent in order to emphasize the glaring inconsistency in the manner the Commonwealth will be permitted to utilize intoxication tests in DUI cases created by the majority's decision.

It is logically inconsistent to prohibit the use of an accused's refusal to take a blood or breath test as evidence in the accused's trial for DUI, while permitting the use of evidence of an accused's refusal to take a field sobriety test at such a trial. The Commonwealth is, thus, permitted to obtain evidence not statutorily required while it is prohibited from obtaining evidence an accused has "impliedly consented" to provide. Perhaps this inconsistency will be addressed by our legislature, if in its wisdom it decides to do so.