STATE of Wisconsin, Plaintiff-Respondent,

v.

Rhody R. MALLICK, Defendant-Appellant.†

Court of Appeals

*No. 96–3048–CR. Submitted on briefs February 17, 1997.—Decided April 24, 1997.*

(Also reported in 565 N.W.2d 245.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Christopher A. Mutschler* and *Michele A. Tjader* of *Barry S. Cohen, S.C.,* of Elkhart Lake.

For the plaintiff-respondent the cause was submitted on the brief of *Scott Roberts,* assistant district attorney of Portage County.

Before Eich, C.J., Vergeront and Roggensack, JJ.

EICH, C.J. Rhody R. Mallick appeals from a judgment convicting him of driving while intoxicated (second offense). He raises a single issue: whether the trial court erred when it admitted evidence that he refused to perform field sobriety tests at the request of the arresting officer. We see no error and affirm the judgment.

In the early morning hours of July 31, 1993, Officer Paul Pagel of the Plover Police Department observed Mallick weaving off the roadway, making a wide turn, and driving with the left wheels of his car over the centerline. Pagel stopped Mallick and asked him to perform various field sobriety tests. When Mallick refused, Pagel arrested him for driving while intoxicated and took him to the Portage County Sheriff's headquarters, where Mallick agreed to provide a sample of his breath for analysis. The test results indicated a blood-alcohol content in excess of the legal limit.

Mallick filed a motion in limine asking the trial court to bar any evidence regarding his refusal to sub-

mit to the field tests. The trial court denied the motion, concluding that the evidence was relevant in determining his guilt or innocence and that its probative value outweighed any possible prejudicial effect. On appeal Mallick argues that the court erred as a matter of law. He contends that the tests are the equivalent of a "testimonial act," the evidence of which is inadmissible under the self-incrimination provisions of Article I, § 8 of the Wisconsin Constitution.[1]

As the primary legal authority for his position, Mallick offers an Oregon Court of Appeals decision, *State v. Green*, 684 P.2d 575 (Or. Ct. App. 1984), *overruled on other grounds by State v. Panichello*, 692 P.2d 720 (Or. Ct. App. 1984). In *Green* the court held that, because there was no statute obligating a defendant to submit to field sobriety testing, the state had no right to admit evidence of his refusal. The court called the refusal a "compelled communication" and its admission violated the self-incrimination provisions of the Oregon Constitution. *Id.* at 579. Mallick asks us to reach a similar conclusion here.

---

[1] Article I, § 8 is the Wisconsin counterpart to the Fifth Amendment to the United States Constitution, and the Wisconsin Supreme Court has held that the self-incrimination provisions of Article I, § 8 are co-extensive with those of the Fifth Amendment and that, as a result, "[there is] no basis for interpreting [the] state constitutional language beyond the articulated scope of federal constitutional guarantees . . . ." *State v. Sorenson*, 143 Wis. 2d 226, 259–60, 421 N.W.2d 77, 90 (1988); *see also State v. Hall*, 207 Wis. 2d 54, 68, 557 N.W.2d 778, 783 (1997) (scope of protection provided by Article I, § 8 of Wisconsin Constitution uses same analysis as United States Supreme Court decisions interpreting the Fifth Amendment) (citing *Sorenson*, 143 Wis. 2d at 259–60, 421 N.W.2d at 90).

The *Green* court considered the dispositive issue as not whether evidence of the refusal is itself "communicative" in that it communicates the defendant's state of mind but "whether the communication is the result of governmental compulsion" of the sort prohibited by the constitutional bar against self-incrimination. *Id.* at 577. According to the court, when the "communication"—performance of field sobriety tests—is something compelled by police, evidence of refusal as implying guilt is inadmissible: "Because defendant had no obligation to take the test, there could also be no conditions placed on his refusal." *Id.* at 579. Thus, said the court, " [u]se of the fact that he refused enables the state to obtain communicative evidence to which it would otherwise have no right, as a result of defendant's refusal to provide noncommunicative evidence to which it also had no right." *Id.* That is about as clear as the court's reasoning gets.

We are more impressed with the reasoning of the Virginia Court of Appeals in *Farmer v. Commonwealth of Virginia,* 404 S.E.2d 371 (Va. Ct. App. 1991), a case we believe is more in line with existing Wisconsin authority. The *Farmer* court considered essentially the same question raised in *Green*: whether "admission of [defendant's] refusal to take the field sobriety test violated his constitutional rights [against self-incrimination] because it placed him in a position in which he had to participate in the test or bear the risk that his failure to do so might raise an inference of guilt." *Id.* at 372. The court held that admitting the fact of the defendant's refusal violated neither the Fifth Amendment to the United States Constitution nor a similar provision in the Virginia Constitution:

The privilege against self-incrimination protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature. In order to be testimonial, an accused's communication must itself, explictly or implicitly, relate a factual assertion or disclose information. In *Schmerber* [*v. California,* 384 U.S. 757, 764 (1966)], the Supreme Court stated that the Fifth Amendment offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The fact of the refusal to perform tests that do not themselves constitute communicative or testimonial evidence is equally non-communicative and non-testimonial in nature. . . .

Asking a suspect to submit to a field sobriety test does not place the suspect in the cruel trilemma of self-accusation, perjury or contempt.

*Id.* at 373 (quotations and quoted sources omitted).

We are particularly impressed with Chief Justice Traynor's reasoning in *People v. Ellis*, 421 P.2d 393 (Cal. 1966), a case rejecting the argument that the Fifth Amendment barred evidence of the defendant's refusal to submit to a voice-identification test. Considering whether the refusal was a "testimonial communication" within the purview of the amendment, the opinion concludes that it was not:

It was circumstantial evidence of consciousness of guilt, and like similar evidence, such as escape from custody, false alibi, flight, suppression of evidence, and failure to respond to accusatory statements when not in police custody, its admission does not

431

violate the privilege. Moreover, as in the foregoing examples, the evidence did not result from a situation contrived to produce conduct indicative of guilt.

. . . .

Although conduct indicating consciousness of guilt is often described as an "admission by conduct," such nomenclature should not obscure the fact that guilty conduct is not a testimonial statement of guilt. It is therefore not protected by the Fifth Amendment. By acting like a guilty person, a man does not testify to his guilt but merely exposes himself to the drawing of inferences from circumstantial evidence . . . .

*Id.* at 397–98.

In *State v. Hubanks*, 173 Wis. 2d 1, 496 N.W.2d 96 (Ct. App. 1992), *cert. denied*, 510 U.S. 830 (1993), Hubanks was charged with several counts of sexual assault and appeared in a lineup. Along with other men standing with him, he stated the words allegedly used by the victim's attacker: "Do you want to feel good or die?" and "Don't let me have to kill you." *Id.* at 11, 496 N.W.2d at 99. During his trial, the court directed him to repeat the same statements to the jury, and when he refused, the court informed the jury of his refusal, instructing the jurors that they could "give that declination the weight [they] think it deserves." *Id.* at 14, 496 N.W.2d at 100 (alteration in original). On appeal, we rejected Hubanks's Fifth Amendment challenge to the trial court's actions, holding that the privilege was not violated. *Id.* at 16, 17 n.8, 496 N.W.2d at 100, 101. Recognizing that the privilege against self-incrimination protects a suspect from being compelled to produce evidence "of a testimonial or communicative nature" but not physical evidence, and pointing to cases indi-

cating that such communications do not include voice and handwriting samples, we said:

> Likewise, in this case, the court-ordered voice sample was to be used only for the purposes of voice identification. Hubanks was not asked to reveal his thoughts or speak his guilt. Rather, the words he was to speak had been chosen for him and did not compel him to reveal the contents of his mind.

*Id.* at 15–16, 496 N.W.2d at 100–01 (quotations and quoted sources omitted).[2]

In *State v. Babbitt*, 188 Wis. 2d 349, 525 N.W.2d 102 (Ct. App. 1994), we held that a defendant's refusal to submit to a field sobriety test was relevant to her guilt with respect to a drunk-driving charge and that the self-incrimination provisions of the United States and Wisconsin constitutions did not bar its admission to prove probable cause to arrest at an implied-consent refusal hearing. We noted first that, while a suspect has a Fifth Amendment right to refuse to respond to police inquiries, there is no constitutional right to refuse to take a breathalyzer test. *Id.* at 360, 525 N.W.2d at 106 (citing *State v. Albright*, 98 Wis. 2d 663, 669, 298 N.W.2d 196, 200 (Ct. App. 1980)).[3] Then, rec-

---

[2] We declined to reach Hubanks's argument that the specific words he was ordered to speak were "non-neutral" and "content-laden," and that the court's actions were inherently prejudicial because the jury had not yet heard one of the sentences he was asked to repeat. *State v. Hubanks*, 173 Wis. 2d 1, 16, 496 N.W.2d 96, 101, *cert. denied*, 510 U.S. 830 (1993). We did so because he never objected in the trial court. *Id.* at 16–17, 496 N.W.2d at 101.

[3] Mallick stresses in his brief that there is a distinction between a breath test and field sobriety tests in that a law requires all motorists to submit to the former but no law requires them to submit to the latter. We found the distinction

ognizing that evidence of refusal to submit to field sobriety testing was relevant as "evidence of consciousness of guilt," and relying on *Farmer*, we concluded that the Fifth Amendment did not bar its admission because it was not a "testimonial communication."

> Field sobriety tests are not testimonial in nature because the suspect does not intend to convey a statement as to his or her state of sobriety by performing the test. Furthermore, [they] involve no requirement that the suspect make admissions or respond to police inquiries regarding prior alcohol use. Finally, there is no compulsion in violation of the fifth amendment because the suspect is not required to perform the test. *We thus conclude that, although Babbitt had a fifth amendment right to refrain from answering the officers' questions, her refusal to perform the field sobriety test was not protected by the fifth amendment.*

*Babbitt*, 188 Wis. 2d at 361–62, 525 N.W.2d at 106 (emphasis added).

■ Mallick correctly points out that, in *Babbitt*, we expressly stated, "In the interest of clarity, we note that our conclusion should not be construed to mean that a defendant's refusal to submit to a field sobriety test may be used as evidence at trial," indicating that

---

unpersuasive in *State v. Babbitt*, 188 Wis. 2d 349, 360, 525 N.W.2d 102, 105 (Ct. App. 1994), noting that "a person who performs the field sobriety test should not be placed in a worse position by virtue of his or her compliance with an officer's request than a defendant who refuses to cooperate with the police." *Id*. While Mallick also states that the refusal to submit to field sobriety tests was irrelevant, we said in *Babbitt* that the refusal was relevant as evidence of consciousness of guilt. *Id*. at 359, 525 N.W.2d at 105.

our holding related only to the question of probable cause to arrest. *Id.* at 363, 525 N.W.2d at 107. Even so, our adoption of the *Farmer* rationale with respect to Fifth Amendment compulsion in *Babbitt*,[4] and our analysis of the same issue in *Hubanks*, leads readily to our conclusion here that neither the Fifth Amendment nor Article I, § 8 of the Wisconsin Constitution bars admission of Mallick's refusal to submit to the field tests into evidence at his trial.[5]

---

[4] Despite that comment, there is no doubt that we considered and decided the basic relevancy and Fifth Amendment issues in *Babbitt*, and we note in this regard that " 'when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision.' " *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981) (quoted source omitted).

[5] As indicated, *Farmer* relied on *Schmerber v. California*, 384 U.S. 757 (1966), in reaching its conclusion. *Farmer v. Commonwealth of Virginia*, 404 S.E.2d 371, 372–73 (Va. Ct. App. 1991). In *Schmerber*, the Court rejected a Fifth Amendment "compulsion" argument with respect to blood tests in drunk-driving cases, noting, as we also mentioned above, that the amendment "offers no protection against compulsion to submit to fingerprinting, photographing or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture." *Schmerber*, 384 U.S. at 764; *see also State v. Isham*, 70 Wis. 2d 718, 731 & n.21, 235 N.W.2d 506, 513 (1975) (adopting the quotation from *Schmerber*).

Other "compulsion" cases have reached similar conclusions with respect to compelling a defendant to (1) stand in a lineup, place tape on his face and utter the words "put the money in the bag," *United States v. Wade*, 388 U.S. 218 (1967); (2) provide handwriting exemplars to investigators, *Gilbert v. California*, 388 U.S. 263 (1967); and (3) provide a voice exemplar by reading

*By the Court.*—Judgment affirmed.

a transcript of a wiretapped conversation into a recording device for comparison purposes, *United States v. Dionisio*, 410 U.S. 1 (1973). The Wisconsin Supreme Court has followed suit. *See, e.g., State v. Doe*, 78 Wis. 2d 161, 166–67, 254 N.W.2d 210, 213–14 (1977) (handwriting exemplars); *Isham*, 70 Wis. 2d at 722, 235 N.W.2d at 509 (voice identification); *State v. Kroening*, 274 Wis. 266, 271, 79 N.W.2d 810, 814 (1956) (blood-alcohol tests); *City of Barron v. Covey*, 271 Wis. 10, 14, 72 N.W.2d 387, 389 (1955) (urine sample); *Hubanks*, 173 Wis. 2d at 20, 496 N.W.2d at 102 (voice samples).