COURT OF APPEALS
DECISION
DATED AND FILED

September 14, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP387**

STATE OF WISCONSIN

Cir. Ct. No. **2021TR8305**

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BRYNTON C. FOSTON,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Winnebago County: SCOTT C. WOLDT, Judge. *Affirmed*.

¶1 GUNDRUM, P.J.[1] Brynton C. Foston appeals from an order of the circuit court revoking his driver's license pursuant to WIS. STAT. § 343.305(9)(a)

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(c) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

for unlawfully refusing to provide chemical testing of his blood alcohol level when requested by a law enforcement officer in connection with an operating a motor vehicle while intoxicated (OWI) arrest. Foston argues that the officer unlawfully extended the traffic stop when he asked Foston to perform field sobriety tests and continued detaining him thereafter. Because we conclude the traffic stop was lawfully extended and Foston was lawfully detained at all times, we affirm.

## *Background*

¶2 The following relevant evidence was presented at the refusal hearing. The arresting officer was the only witness to testify.

¶3 Between 2:00 a.m. and 3:00 a.m. on August 27, 2021, the officer was on patrol in his squad car when he observed a vehicle, driven by Foston, without its headlights on. After the officer activated his emergency lights, the vehicle accelerated away before turning into a driveway. According to the officer, "When the vehicle pulled in, it didn't, like, find a parking spot. I saw the vehicle, like, stop and pull into park and the driver exit the vehicle and start walking towards the back door." Foston had to "use" the vehicle in order to exit it and remain standing, and he was stumbling "immediately" upon exiting. He then stumbled several times as he walked towards the back door.

¶4 The officer "immediately got out of [his] squad car and started giving commands" to Foston. Making contact with him, the officer noticed Foston's eyes were bloodshot and his speech "extreme[ly] slurred." Foston was "very argumentative" as the officer was "trying to get him to not go into the house," and the officer had to radio for backup. Multiple times the officer asked Foston to perform field sobriety tests, but Foston continually refused.

¶5 The officer arrested Foston for operating a motor vehicle while intoxicated, and Foston "became even more belligerent." The officer and two supervisors eventually got Foston into a squad car and to a hospital for a blood draw, but he remained extremely uncooperative and argumentative, and he ultimately refused the blood draw.

¶6 The circuit court determined the officer possessed reasonable suspicion "that criminal activity was afoot" and there was probable cause to believe Foston had operated his motor vehicle while intoxicated. The court ultimately found Foston "guilty on the refusal." Foston appeals.

### *Discussion*

¶7 Foston contends the arresting officer unlawfully extended the traffic stop and thus he was not lawfully detained at the time he refused the arresting officer's requests to perform field sobriety tests, which refusals then led to his arrest. Foston maintains that because he was unlawfully detained and ultimately unlawfully arrested, his operating privileges should not have been revoked for his refusal to submit to chemical testing. We disagree.

¶8 In addition to considering whether an officer properly informed the defendant of his or her rights and responsibilities under the implied consent law and whether the defendant refused to permit the chemical testing, at a refusal hearing a circuit court also considers

> *[w]hether the officer had probable cause to believe the [defendant] was ... operating a motor vehicle while under the influence* of alcohol, a controlled substance or a controlled substance analog or any combination of alcohol, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders the person incapable of safely driving, or under the combined influence of alcohol and any other drug to a

> degree which renders the person incapable of safely driving, having a restricted controlled substance in his or her blood, or having a prohibited alcohol concentration … *and whether the person was lawfully placed under arrest* for [operating a motor vehicle while under the influence].

*See* WIS. STAT. § 343.305(9)(a)5.a. (emphasis added); *State v. Anagnos*, 2012 WI 64, ¶¶4, 27, 341 Wis. 2d 576, 815 N.W.2d 675. "As part of this inquiry, the circuit court may entertain an argument that the arrest was unlawful because the traffic stop that preceded it was not justified by either probable cause or reasonable suspicion." *Anagnos*, 341 Wis. 2d 576, ¶4.

¶9 "Whether there was probable cause or reasonable suspicion to conduct a stop is a question of constitutional fact, which is a mixed question of law and fact to which we apply a two-step standard of review." *Anagnos*, 341 Wis. 2d 576, ¶21. "We review the circuit court's findings of historical fact under the clearly erroneous standard, and we review independently the application of those facts to constitutional principles." *State v. Post*, 2007 WI 60, ¶8, 301 Wis. 2d 1, 733 N.W.2d 634.

¶10 Reasonable suspicion necessary for a temporary investigative detention, such as a traffic stop, requires "more than an officer's inchoate and unparticularized suspicion or 'hunch,'" *Post*, 301 Wis. 2d 1, ¶10 (citation omitted); rather, an officer must possess "specific and articulable facts which, taken together with rational inferences from those facts," warrant a reasonable belief that the person being stopped "has committed, was committing, or is about to commit" an offense. *Id.*, ¶¶10, 13. In determining whether a police officer had reasonable suspicion, we must consider what a reasonable officer would have reasonably suspected given the officer's training and experience. *State v. Waldner*, 206 Wis. 2d 51, 56, 556 N.W.2d 681 (1996). We must look at the

4

totality of the facts taken together.  *Id.* at 58.  As facts accumulate, reasonable inferences about their cumulative effect can be drawn.  *Id.*

¶11     "Probable cause exists where the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe, in this case, that the defendant was operating a motor vehicle while under the influence of an intoxicant."  *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986).  Probable cause is a question "based on probabilities; and, as a result, the facts faced by the officer 'need only be sufficient to lead a reasonable officer to believe that guilt is more than a possibility.'"  *County of Dane v. Sharpee*, 154 Wis. 2d 515, 518, 453 N.W.2d 508 (Ct. App. 1990) (citation omitted).

¶12     In this case, to have lawfully turned on his emergency lights and effectuated a traffic stop on Foston, the officer needed either probable cause or reasonable suspicion that Foston had committed a crime or traffic violation.  *See State v. Houghton*, 2015 WI 79, ¶22, 364 Wis. 2d 234, 868 N.W.2d 143.  While Foston does not dispute that the initial traffic stop was lawful, we note that the higher standard—probable cause—was certainly met here as the officer observed Foston driving without his headlights on between 2:00 a.m. and 3:00 a.m., in violation of WIS. STAT. § 347.06(1).  With the headlight evidence alone, the officer could lawfully stop and make contact with Foston, as he did, for the purpose of investigating the violation and perhaps issuing Foston a citation related to it.

¶13     What began as a headlight investigation quickly extended into more but lawfully so.  If, during a valid traffic stop, the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable

suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun. ***State v. Betow***, 226 Wis. 2d 90, 94, 593 N.W.2d 499 (Ct. App. 1999).

¶14    Here, the officer was aware that Foston had been operating his vehicle in the middle of the night without his headlights on, providing the officer with an initial indication that something was amiss. Then, as soon as the officer turned on his emergency lights to effectuate the traffic stop, Foston began accelerating away—indicating a strong desire to avoid contact with the officer and consciousness of his guilt. *See **State v. Quiroz***, 2009 WI App 120, ¶18, 320 Wis. 2d 706, 772 N.W.2d 710 ("The fact of an accused's flight is generally admissible against the accused as circumstantial evidence of consciousness of guilt and thus of guilt itself."). Rather than pulling over his vehicle and waiting for the officer to come speak with him, Foston instead turned into a driveway, parked, and started to walk toward the back door of a house; his continued flight indicating a continued consciousness of guilt. Significantly, the officer observed that as Foston was exiting the vehicle, he needed to use the vehicle itself in order to exit and stand, and he then "immediately" stumbled. Foston stumbled several more times as he walked towards the back door. All of this occurred between the hours of 2:00 a.m. and 3:00 a.m.—around bar time. *See **Post***, 301 Wis. 2d 1, ¶36 (time of night "does lend some further credence" to an officer's suspicion of intoxicated driving). Additionally, while still engaged in his lawful contact with Foston in connection with the headlight violation, the officer observed that Foston's eyes were bloodshot and his speech "extremely slurred." All of these facts accumulated to the point of providing the officer with strong reasonable suspicion to detain Foston further for an OWI investigation. Thus, Foston was lawfully

detained at the time he repeatedly refused the officer's requests for him to perform field sobriety tests.

¶15 Foston was very argumentative with the officer, causing him to radio for backup, and, as indicated, Foston refused multiple requests to perform field sobriety tests, further indicating substantial consciousness of guilt. Both of these additional "specific and articulable facts" further pointed to Foston's unlawful operation of his vehicle. *See* **State v. Seibel**, 163 Wis. 2d 164, 182, 471 N.W.2d 226 (1991) (noting that "belligerence … [is] often associated with excessive [intoxication]"); **State v. Mallick**, 210 Wis. 2d 427, 434, 565 N.W.2d 245 (Ct. App. 1997) ("[E]vidence of refusal to submit to field sobriety testing [is] relevant as 'evidence of consciousness of guilt.'"). WISCONSIN STAT. § 343.305(9)(a)5.a. states that for a lawful arrest, an officer must have probable cause that a person is operating while under the influence of:

> alcohol, a controlled substance *or* a controlled substance analog *or* any combination of alcohol, a controlled substance and a controlled substance analog, under the influence of any other drug to a degree which renders the person incapable of safely driving, *or* under the combined influence of alcohol and any other drug to a degree which renders the person incapable of safely driving, having a restricted controlled substance in his or her blood, *or* having a prohibited alcohol concentration.

(Emphasis added.) The totality of the facts of which the officer was aware accumulated to the point of providing probable cause for the officer to arrest Foston for operating his vehicle while in a prohibited condition as identified in § 343.305(9)(a)5.a. and to take him to the hospital for a blood draw, which he then refused.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.