STATE of Wisconsin, Plaintiff-Respondent,

v.

O. Z. BALDWIN, Defendant-Appellant-Petitioner.

Supreme Court

*No. 79–813–CR.  Argued March 3, 1981.—Decided April 29, 1981.*

(Also reported in 304 N.W.2d 742.)

For the petitioner the cause was argued by *Louis B. Butler, Jr.,* assistant state public defender, with whom on the briefs was *David C. Niblack,* state public defender.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Dorothy H. Dey,* assistant attorney general, and oral argument by *David J. Becker,* assistant attorney general.

WILLIAM G. CALLOW, J. This is a review of a decision of the court of appeals which affirmed a judgment of the circuit court for Milwaukee county, FREDERICK P. KESSLER presiding, convicting the defendant, O. Z. Baldwin, of two counts of second-degree sexual assault contrary to sec. 940.225 (2) (a), Stats. 1975.[1]

---

[1] Sec. 940.225 (2) (a), Stats. 1975, provides:

"(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following shall be fined not more than $10,000 or imprisoned not more than 10 years or both:

Baldwin was sentenced to two concurrent six-year terms at the Wisconsin State Prison at Waupun.

## I.

At trial the victim testified that on the evening of July 16, 1977, somewhere between eight and nine o'clock, Baldwin knocked at the door of her second story apartment in Milwaukee. Baldwin and the victim knew each other, and Baldwin was admitted. Inside the apartment Baldwin suggested that he and the victim have sexual intercourse, and he began to touch her on the breasts. The victim struggled to resist Baldwin, and Baldwin threatened that, if she did not submit, she would be hurt. As the assault continued, Baldwin struck, choked, and threatened the victim and twice dragged her from locations in the apartment into a bedroom where he attempted to force her to perform oral sex with him, had sexual intercourse with her, and performed cunnilingus on her. The assault terminated when the victim's brother appeared at the bedroom door. Baldwin fled the apartment but was apprehended by the police.

During the trial the victim was asked at one point to describe the manner in which Baldwin dragged her into the bedroom. The prosecuting attorney requested the victim to demonstrate it, and over the defendant's objection the victim was permitted to grasp the prosecuting attorney in the same manner as she was grasped by Baldwin. One of the issues on this review is whether this demonstration was improper.

Following the taking of evidence the jury was instructed that the defendant had been charged with one count of nonconsensual sexual intercourse "by use and

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

threat of force and violence" and one count of non-consensual sexual intercourse, cunnilingus, "by use and threat of force or violence."[2] The trial court defined second-degree sexual assault as "sexual intercourse with another person without the consent of that person by use or threat of force or violence." In order to convict the defendant, the jury was instructed that it had to be satisfied, beyond a reasonable doubt, that three elements were present: sexual intercourse with the victim by the defendant; lack of consent by the victim; and "[t]hird, that the defendant had sexual intercourse with [the victim] by use of [sic] threat of force or violence." Focusing upon the third element, the trial court instructed the jury:

"The third element requires that the defendant had sexual intercourse with [the victim] by use or threat of force or violence. If you are satisfied beyond a reasonable doubt from the evidence presented in this case that the defendant had sexual intercourse with [the victim], that [the victim] did not consent to sexual intercourse, and that the defendant had sexual intercourse by use or threat of force or violence, then you should find the defendant guilty of second degree sexual assault. If you are not so satisfied, then you must find the defendant not guilty."

The defendant argues that it was error to instruct the jury in the disjunctive on the element of use or threat of force or violence.

At the time of sentencing the trial court considered, among other things, the fact that the defendant consistently denied his guilt and showed no remorse. The defendant claims it was improper for the trial court to consider his refusal to admit guilt and lack of remorse in imposing sentence.

The court of appeals, in an unpublished opinion, 94 Wis.2d 695, 289 N.W.2d 372 (Ct. App. 1979), affirmed

---

[2] In this respect the trial court was in error, since the charging documents uniformly charged in the conjunctive.

the conviction, holding that the courtroom demonstration was a valid evidentiary tool; that the disjunctive jury instruction did not deprive the defendant of his right to a unanimous jury; and that the trial court's consideration of the defendant's lack of remorse was not an abuse of discretion. We granted review and we affirm.

## II.

The defendant's most substantial arguments, and those most vigorously pursued both below and before this court, relate to the disjunctive jury charge. The essence of the defendant's position is that the disjunctive instruction prejudiced him in several ways: first, because the defendant was charged in the conjunctive, rather than the disjunctive, the disjunctive jury instruction relieved the state of the burden of proving all of the essential facts beyond a reasonable doubt; second, the disjunctive instruction did not sufficiently define the crime to permit the jury to function intelligently; and third, the disjunctive charge deprived the defendant of his right to a unanimous verdict because it was possible for some of the jurors to have been convinced that the defendant threatened but did not use force, and others, that he used but did not threaten force.

As a preliminary matter, the state argues that by failing to object to the disjunctive jury instruction at trial the defendant has waived his right to raise the issue on appeal. It is true as a general rule that failure to object to a jury instruction in timely fashion constitutes a waiver of the objection. *Kutchera v. State,* 69 Wis.2d 534, 551, 230 N.W.2d 750 (1975); *State v. Cydzik,* 60 Wis.2d 683, 694, 211 N.W.2d 241 (1973); *State v. Schenk,* 53 Wis.2d 327, 333, 193 N.W.2d 26 (1972). "This rule, however, is not inflexible and admits

of exceptions in cases of 'compelling circumstances.' "
*Brown v. State,* 59 Wis.2d 200, 214, 207 N.W.2d 602
(1973). The defendant's challenge to the disjunctive
jury instruction raises state and federal constitutional
questions[3] relative to the state's burden of proof beyond
a reasonable doubt and the defendant's right to a unani-
mous verdict. These matters go directly to the integrity
of the fact finding process, and the defendant's failure
to object at trial should not preclude him from raising
them on appeal.

(A)

The defendant argues that the disjunctive jury in-
struction relieved the state of proving all the elements
of the crime and failed to apprise the jury of the facts
it must find in order to convict. This argument is based
upon the assumption that, because the complaint and
information charged the defendant conjunctively, that
is, "by use *and* threat of force *and* violence," those ele-
ments must all be proved beyond a reasonable doubt
before the defendant could be convicted. The assump-
tion is incorrect, however, because it places the charg-
ing documents above the statutes in defining the stan-

[3] The right to trial by jury is guaranteed by Sections 5 and 7
of Article I of the Wisconsin Constitution and the Sixth and
Fourteenth Amendments to the Federal Constitution. *See: Duncan
v. Louisiana,* 391 U.S. 145 (1968). Although the states have not
been held to unanimous jury verdicts as a matter of federal con-
stitutional law, *see, Apodaca v. Oregon,* 406 U.S. 404 (1972), this
court has held that the right to a unanimous jury verdict inheres
in the state constitutional right to trial by jury. *See: Holland v.
State,* 91 Wis.2d 134, 138, 280 N.W.2d 288 (1979); *Vogel v. State,*
138 Wis. 315, 119 N.W. 190 (1909). The standard of proof beyond
a reasonable doubt likewise has its roots in the fourteenth amend-
ment. *In Re Winship,* 397 U.S. 358 (1970); *Turner v. State,* 76
Wis.2d 1, 250 N.W.2d 706 (1977).

dards for criminal liability. In this state crimes are exclusively statutory, and the task of defining criminal conduct is entirely within the legislative domain. As a consequence, while a charging document must always allege facts necessary to support a conviction, it does not follow that a conviction requires proof of *every* fact alleged in a complaint. To secure a conviction of a statutorily defined crime, the state need not prove *all* facts alleged in the charging documents but only those sufficient to constitute the statutory offense. The general rule is that, where a statute sets forth a number of separate acts disjunctively, they may be charged conjunctively, and a guilty verdict will stand if the evidence is sufficient to prove any one of the acts charged. *Turner v. United States,* 396 U.S. 398, 420 (1970) ; *United States v. Murray,* 621 F2d 1163, 1171 (1st Cir 1980) ; 2 Wharton's, *Criminal Procedure,* sec. 291, 126 (12th ed. 1975). Here the defendant was charged conjunctively with respect to the element of force in the offense of second-degree sexual assault. In using the conjunctive, the state did not assume the task of proving both conjunctive elements; either one would suffice. Thus the variance between the conjunctive charge and the disjunctive instruction did not operate to relieve the state of its burden of proving each element of the crime charged, and the jury, instructed disjunctively, was fully apprised of the facts which had to be proved in order to convict.

(B)

Apart from the interrelationship of the conjunctive charge and the disjunctive jury instruction, the defendant argues that the disjunctive instruction itself permitted the jury to arrive at a guilty verdict without necessarily agreeing whether force was used or merely

threatened.[4] This is no doubt true, but we do not believe the defendant's right to a unanimous jury verdict extends to jury unanimity with respect to the alternative method of satisfying the force component of second-degree sexual assault contained in sec. 940.225 (2) (a), Stats. 1975.

This court recently considered a similar unanimity issue in *Holland v. State,* 91 Wis.2d 134, 280 N.W.2d 288 (1979). There we decided that jury unanimity is not required with respect to a particular theory of guilt under the party to a crime statute, and thus a disjunctive jury instruction on those theories was not error. The rationale of Holland was that

"Unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, and unanimity is not required with respect to the alternative means or ways in which the crime can be committed." *Id.* at 143.

Applying this reasoning to the instant case, we begin by recognizing that the crime charged is second-degree sexual assault contrary to sec. 940.225(2) (a), Stats. 1975. Within that statutory subsection a particular offense is described; it differs significantly from the

---

[4] The jury instruction to which the defendant objects contains two separate disjunctive constructions, either or both of which would be objectionable under the defendant's reasoning. In his brief the defendant states:

"In this case, the state chose to charge the defendant with both acts of threatening force and violence, and acts of using force and violence. Therefore, the state must prove both if the defendant is to be found guilty as charged."

We assume, therefore, that the defendant's arguments are directed mainly to the "use" or "threat" disjunctive, and we will confine our discussion accordingly. We note, however, that our analysis is equally applicable to the "force" or "violence" disjunctive.

offenses described in paragraphs (b), (c), (d) and (e),[5] violation of each of which also constitutes second-degree sexual assault. Although the generous use of disjunctive construction in sub. (2)(a) gives rise to a number of possible combinations of proscribed activity, the offense described therein can be broken down into three essential elements: (1) sexual contact or sexual intercourse with the victim; (2) lack of the victim's consent; and (3) threat or use of force or violence. Stated in simpler terms the offense has a sexual activity component, a consent component, and a force component. Limiting our consideration to the third component, under *Holland* the jury need be unanimous only with regard to its presence; it need not necessarily agree upon the particular manner or means by which the defendant's conduct satisfied the third element as long as its instruction is limited to means specified in the statute.

The defendant argues that use of force and threat of force are conceptually distinguishable, *see, United States v. Gipson*, 553 F.2d 453 (5th Cir. 1977), and

---

[5] Sec. 940.225(2)(b), (c), (d), and (e), Stats. 1975, provides:

"(2) SECOND DEGREE SEXUAL ASSAULT. Whoever does any of the following shall be fined not more than $10,000 or imprisoned not more than 10 years or both:

". . .

"(b) Has sexual contact or sexual intercourse with another person without consent of that person and causes injury, illness, disease or loss or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim.

"(c) Has sexual contact or sexual intercourse with a person who suffers from a mental illness or deficiency which renders that person temporarily or permanently incapable of appraising the person's conduct, and the defendant knows of such condition.

"(d) Has sexual contact or sexual intercourse with a person who the defendant knows is unconscious.

"(e) Has sexual contact or sexual intercourse with a person who is over the age of 12 years and under the age of 18 years without consent of that person, as consent is defined in sub. (4)."

thus the jury must be made to agree upon which of the two was present in the crime. We are not prepared to debate the extent to which use of force and threat of force represent different concepts. There can be little doubt that, as the defendant states, the threat of a beating is distinguishable from the beating itself. But the element of compulsion, the utter subjugation of the victim's free will, is no different in character if it results from the raised fist or the first blow. Moreover, it is not difficult to imagine situations where the line between "threat" and "use" blurs, even where a jury may be in agreement as to precisely what a defendant did. The proper application of the *Gipson* rationale is not dependent upon the conceptual dissimilarity, but rather the conceptual similarity of the conduct. In *Holland* we said "[t]he *Gipson* logic requires the jury to agree on the factual theory or 'concept' underlying criminal liability but does not require it to split hairs over nomenclature." 91 Wis.2d at 139. Thus we must determine whether, for purposes of imposing criminal liability under sec. 940.225(2)(a), Stats. 1975, use of force or violence and threat of force or violence are of sufficient conceptual similarity to comprise but a single element of the offense and whether such was the intent of the legislature. If so, then jury unanimity as to one or the other is not required.

Prior to the creation of sec. 940.225 by the enactment of Chapter 173, Laws of 1977, sex related offenses were classified as crimes against sexual morality. Sec. 944.01, Stats. 1973, provided:

"**Rape.** (1) Any male who has sexual intercourse with a female he knows is not his wife, by force and against her will, may be imprisoned not more than 30 years.

"(2) In this section the phrase 'by force and against her will' means either that her utmost resistance is

overcome or prevented by physical violence or that her will to resist is overcome by threats of imminent physical violence likely to cause great bodily harm."

Sec. 944.02, Stats. 1973,[6] sexual intercourse without consent, contained some of the offenses now included in sec. 940.02, Stats., but the former section did not contain a force element. It is significant that in the old rape statute the legislature chose to define the phrase "by force and against her will" as a unit, and further that the definition encompassed physical violence as well as "threats of imminent physical violence likely to cause great bodily harm." Although the current sexual assault statute reflects a more modern view of sex related offenses, we believe it maintains the proscription against force or compulsion not as separate and distinct forms of conduct, but as a more generalized concept of conduct, including force threatened and force applied, directed toward compelling the victim's submission. The words "use or threat of force or violence" found in sec. 940.225(2)(a), Stats. 1975, represent the legislature's expression of that concept, and we believe it is clear that the legislature intended that any conduct coming within that generalized force concept need not be further particularized. Recognizing that words even when

---

[6] Sec. 944.02, Stats. 1973, provided:

"944.02 **Sexual intercourse without consent.** Any male who has sexual intercourse under any of the following circumstances with a female he knows is not his wife may be imprisoned not more than 15 years:

"(1) If she is incapable of resisting or consenting because of stupor or abnormal condition of the mind and he knows of her incapacity; or

"(2) If she is mentally ill, mentally infirm or mentally deficient and he knows of her incapacity; or

"(3) If she submits because she is deceived as to the nature of the act or because she believes that the intercourse is marital and this deception or belief is intentionally induced by him."

well chosen are at times imprecise and inadequate to their task, we are convinced that the phrase "use or threat of force or violence" is a sound and reasonable attempt to capture the essence of the proscribed conduct, and we conclude that to require jury unanimity on "use of force" as opposed to "threat of force" or "force" as opposed to "violence" would be inconsistent with the aim of the legislature in defining the offense and, more important, would reduce the efficacy of the statute itself.

Our conclusion also lays to rest the defendant's fear that a defendant might be charged with separate counts of second-degree sexual assault based upon use of force, threat of force, or both, and yet be convicted upon a single instruction which did not differentiate between use and threat of force. Just as we do not view the present offense as requiring jury unanimity upon any of the subcomponents of the phrase "use or threat of force or violence," neither do we view it as permitting such subdivision for purposes of charging separate offenses. While the "additional fact" test for multiplicity set forth in *State v. Eisch*, 96 Wis.2d 25, 291 N.W.2d 800 (1980), permits separate counts for separate sexually assaultive acts, it is not available to justify separate counts based upon different kinds of aggravating conduct associated with a single sexual act. *See: People v. Johnson*, 406 Mich. 320, 279 N.W.2d 534 (1979); *People v. Weaver*, 98 Mich. App. 589, 296 N.W.2d 205 (1980).

Finally, the defendant's reliance upon several cases from other jurisdictions is unavailing. In *State v. Colson*, 405 A.2d 717 (Me. 1979), the defendant was charged with raping the victim "by force and against her will." The Maine statute then in existence defined the crime of rape as follows:

"1. A person is guilty of rape if he engages in sexual intercourse:

"...

"B. With any person, not his spouse, and he compels such person to submit:

"(1) by force and against the person's will; or

"(2) by threat that death, serious bodily injury, or kidnapping will be imminently inflicted on the person or on any other human being." 17-A MRSA sec. 252(1).

After a trial to the court the trial judge found that the evidence was sufficient to show that the defendant had sexual intercourse with the victim not by force but by threat of force of lesser magnitude than specified in the rape statute. The court concluded, however, that those lesser threats were sufficient to convict under the statutory language "by force and against her will." The supreme court of Maine reversed the conviction, holding that in view of the placement of the force and threat language in different subsections of the statute, the "statutory scheme would be disrupted if the phrase 'by force and against the person's will' were construed to mean anything beyond actual physical force." *Id.* at 720. The Maine statute is clearly distinguishable from ours, and we have the benefit of a prior legislative expression that the phrase "by force and against her will" includes both threatened and applied force. In *Hicks v. State,* 362 So.2d 730 (Fla. App. 1978), the defendant was charged with sexual battery by use of physical force, but was convicted upon a jury instruction and verdict based upon threat of force. The Florida court of appeals reversed the conviction on the ground that the defendant had been convicted of a crime with which he had not been charged. Inasmuch as the defendant in this case was charged with sexual intercourse by threat and use of force and violence, the *Hicks* situation is not presented. *See: State v. Williamson,* 84 Wis. 2d 370, 396, 267 N.W.2d 337 (1978). And *State v. McDermott,* 135 Vt. 47, 373 A.2d 510 (1977), is inapposite because it deals with ways to handle pleading and

instructing the jury when multiple offenses can be carved from a single statute.

We hold, therefore, that it was not error to instruct the jury in the disjunctive with respect to the force element of second-degree sexual assault contained in sec. 940.225(2)(a), Stats. 1975. The jury was instructed properly on the elements of the offense with which the defendant was charged and was further given the standard unanimity instruction, Wis. J I—*Criminal* 515. That was sufficient.

### III.

The defendant argues that the courtroom demonstration of the method by which the defendant grasped the victim in order to drag her into the bedroom was prejudicial and infringed upon his right to a fair and impartial trial. The record shows that while a general objection was made by defense counsel, no grounds were stated. In his brief to the court of appeals, the defendant concedes that no such grounds were stated. Earlier in this term we had occasion to comment upon the difficulties of appellate review of evidentiary matters upon an inadequate record. *See: State v. Wedgeworth,* 100 Wis.2d 514, 302 N.W.2d 810 (1981). In this case defense counsel requested to be heard outside the presence of the jury, and the trial judge ordered a sidebar conference instead. We once again express our disapproval of this practice, but we must assume that, had counsel been offered an opportunity to make a record of his objection, it would have been based upon sec. 904.03, Stats. We will proceed as if this were the case, and thus avoid the necessity of determining whether the claimed error is plain error. *See: Virgil v. State,* 84 Wis.2d 166, 195–

201, 267 N.W.2d 852 (1978) (Hansen, Hanley and Callow, JJ., dissenting).

In *State v. Wollman*, 86 Wis.2d 459, 464, 273 N.W.2d 225 (1979), we stated:

"The question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record. *McCleary v. State*, 49 Wis.2d 263, 182 N.W.2d 512 (1971). The test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised."

We have in this case the benefit of neither argument of counsel nor grounds upon which the trial court's ruling was made. Some light is shed upon the matter by the postconviction motion and the trial court's written memorandum decision on this issue, but we can nonetheless look at the facts in the record and decide whether, in the exercise of the appropriate discretion, the trial court could have permitted the demonstration.

In order for evidence to be excluded under sec. 904.03, Stats., on the basis of unfair prejudice, it must have "a tendency to influence the outcome by improper means." *Christensen v. Economy Fire & Casualty Co.*, 77 Wis.2d 50, 61, 61 n. 11, 252 N.W.2d 81 (1977). Demonstrations such as the one in this case run the risk of evoking a sympathetic response which might tend to cause the jury to reach its decision on an emotional basis. But there is nothing inherently prejudicial about demonstrative, as opposed to testimonial, evidence. *See:* 4 Wigmore, *Evidence,* sec. 1151 (Chadbourn rev. 1972) ; McCormick, *Evidence,* secs. 212, 215 (2d ed. 1972). Moreover, as a general rule courts tend to permit reenactments of criminal conduct. Annot., 100 A.L.R.2d 1257 (1965), "Admissibility of evidence of accused's re-enactment of

crime." In this case the victim was requested to demonstrate the manner in which the defendant grasped her in order to drag her into the bedroom. The victim's testimony just prior to the demonstration is indicative of how difficult it is at times to describe verbally an event which is relatively simple to demonstrate. The demonstration was intended to clarify the victim's description of the event, and for that purpose it was not improper. *See: Anderson v. State,* 66 Wis.2d 233, 248, 223 N.W.2d 879 (1974). Nor does the record indicate anything about the demonstration that would qualify as unduly prejudicial. Following the demonstration the trial judge stated for the record:

"The record should reflect at this point that the witness stepped down from the witness box, placed her arms around—stood in the rear of Mr. Malmstadt and placed her arms around his chest."

From this it does not appear that the demonstration was excessively long, or that it focused undue or improper attention on the victim. Thus we conclude that the trial court, in the exercise of the appropriate discretion, could have permitted the demonstration over an objection based upon sec. 904.03, Stats. In permitting such a demonstration in this case the trial court did not unduly prejudice the defendant or deprive him of a fair and impartial trial.

## IV.

The defendant's argument that the trial court abused its discretion in sentencing by relying in part upon the defendant's lack of remorse and refusal to admit his guilt rests upon *Scales v. State,* 64 Wis.2d 485, 219 N.W. 2d 286 (1974). In *Scales* the defendant was convicted of homicide by intoxicated use of a vehicle and given

the maximum sentence of five years in prison. In concluding that the trial judge had based his sentencing decision exclusively upon the defendant's refusal to admit his guilt, we stated:

"A trial judge may, but he need not, take into consideration such expressions as indicative of the likelihood that the rehabilitory process hoped for in the criminal law has commenced; but where, as here, the defendant refuses to admit his guilt, that fact alone cannot be used to justify incarceration rather than probation." *Id.* at 496–97.

Subsequently, in *Williams v. State,* 79 Wis.2d 235, 239, 255 N.W.2d 504 (1977), we observed that the basis of *Scales* and the cases upon which it relied "was that the trial court in those cases gave undue and almost overwhelming weight to the defendant's refusal to admit guilt." In *Williams* we found that the trial court's sentencing decision was not an abuse of discretion because, while the trial court did acknowledge the defendant's refusal to admit guilt, "[t]he trial court merely stated the fact of the defendant's lack of remorse, repentance and cooperation. There is here presented absolutely no evidence that the fact that the defendant failed to confess his guilt or to name his accomplices materially influenced the trial court's discretion or that the trial court in any other way abused its discretion in sentencing." *Id.* at 239–40. To resolve the issue we must decide whether the trial court's consideration of the defendant's lack of remorse was proper under the rationale of *Williams* or improper under *Scales.*

At the sentencing hearing the trial court reviewed the presentence report and heard the arguments of counsel. In pronouncing sentence the court considered the violent nature of the crime, the defendant's prior record, the extent of the defendant's culpability based upon the facts adduced at trial, and the need to protect the public from

the danger posed by the defendant. These are proper factors to be considered by a judge at the sentencing stage. *See: State v. Tew,* 54 Wis.2d 361, 195 N.W.2d 615 (1972). We cannot say that the trial court's mention of the defendant's lack of remorse and refusal to admit guilt was a mere acknowledgment of the matter in a totally objective and neutral light, as it appeared to be in *Williams.* It clearly was a factor, among the several others already described, which contributed in part to the judge's sentencing decision.

It is possible to distinguish *Scales* and *Thomas v. United States,* 368 F.2d 941 (5th Cir. 1966), upon which *Scales* relies, from the instant case because in the former two cases the trial court's consideration of the defendant's lack of remorse was not one among many other factors; further, unlike the present case, both Scales and Thomas were given the maximum sentence possible for the offenses of which they had been convicted. This approach was taken in *United States v. Santiago,* 582 F.2d 1128 (7th Cir. 1978), in which the trial court, in sentencing the defendant, stated "[t]here is no question in my mind about it. He continues to deny his guilt, which is another strike against him, as far as I am concerned." *Id.* at 1136. The court of appeals did not find an abuse of discretion in that case because the trial court's remarks were not considered to have been an attempt to coerce the defendant into a confession, because the sentence given was well within the maximum possible for the particular offense, and further because the remorse factor was one of several considered by the court.

While we might be satisfied under the *Santiago* analysis that the court's consideration of Baldwin's failure to admit his guilt was not an abuse of discretion, we choose to go a step further. The rationale of *Scales*

and *Thomas* is simply that a defendant must not be subject to greater penalties for having exercised his right against self-incrimination. There is a distinction, however, between the evil which *Scales* seeks to avoid and the trial court's obligation to consider factors such as the defendant's demeanor, his need for rehabilitation, and the extent to which the public might be endangered by his being at large. *See: Coleman v. State,* 409 N.E.2d 647, 651 (Ind. App. 1980). A defendant's attitude toward the crime may well be relevant in considering these things. In this case we believe the trial court considered a variety of factors, giving no undue or overwhelming weight to any one in particular. The sentence imposed was well within the maximum for which the defendant might have been sentenced, and while it is evident that the defendant's failure to admit his guilt and his lack of remorse were factors in the sentencing decision, we do not believe it was improper or an abuse of discretion.

*By the Court.*—The decision of the court of appeals is affirmed.