STATE of Wisconsin, Plaintiff-Respondent,

v.

Alphonso HUBANKS, Defendant-Appellant.†

Court of Appeals

*No. 91–1550–CR. Oral argument September 9, 1992.—Decided November 3, 1992.*

(Also reported in — N.W.2d —.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Keith A. Findley* and *Jack E. Schairer,* assistant state public defenders, of Madison, Wisconsin, with oral argument by *Keith A. Findley.*

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *Thomas J. Balistreri,* assistant attorney general, of Madison, Wisconsin, with oral argument by *Thomas J. Balistreri.*

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

SULLIVAN, J.    Alphonso Hubanks appeals from a judgment of conviction of four counts of first-degree sexual assault, sec. 940.225(1)(b), Stats.; of armed robbery, party to a crime, secs. 943.32(1)(b) and (2) and

939.05, Stats.; and abduction, party to a crime, secs. 948.30(2)(b) and 939.05, Stats. On appeal, Hubanks raises the following issues: (1) insufficiency of the evidence to sustain his convictions of sexual assault and armed robbery; (2) violation of his privilege against self-incrimination when the trial court directed him to give a voice sample in the presence of the jury; (3) violation of his right to effective assistance of counsel; and (4) that he is entitled to a new trial under sec. 752.35, Stats. because the issues have not been fully tried. We affirm.[1]

## FACTS

The victim, a fifteen-year-old girl, was driving home with her mother and stepfather from a graduation ceremony at the University of Wisconsin-Milwaukee, where the victim had successfully completed a pre-college program. Her parents stopped the car at a store to pick up cigarettes and left the motor running. Two men entered the car and drove off with the victim in the back seat. One of the men put a baseball cap over her face. The victim testified that the men took items of personal jewelry from her and, upon threat of death, forced her to remove her clothing. Because her face was covered she could not clearly see the men. However, through a hole in the back of the cap she saw one of them holding what she believed, at the time, to be a gun.[2] The object later proved to be a glass smoking pipe.

---

[1] This court certified this case to the supreme court on February 25, 1992. *See* Rule 821.08, Stats. The supreme court denied certification on April 7, 1992.

[2] The victim testified on direct examination:

Q. Were you able to see anything through the hat?

A. Yes. It was like—it seemed as if he had a gun in his hand. I'm not pretty sure but from the dark it looked like it was a gun.

After compelling the victim to remove her clothing, both men forced her to engage in nonconsensual acts of sexual contact. Hubanks and his accomplice released the victim and drove off with her jewelry and her parents' car. A few hours later, police located the stolen car and kept it under surveillance. Hubanks and a companion were arrested after police observed the men get into the car and attempt to start it. At the time of his arrest, Hubanks attempted to discard several objects by throwing them under a nearby car. The items were the victim's jewelry, coins and the keys to the car.

The morning after the assaults, Hubanks participated in a lineup. Although the victim could only describe her attackers as two black men, she identified Hubanks in a six-man police lineup from his unique, deep "frog-like" voice. At the lineup, each man spoke the words of the attacker: "Do you want to feel good or die?" and "Don't let me have to kill you."

Hubanks was tried before a jury and convicted.

## I. SUFFICIENCY OF THE EVIDENCE

The offenses of first-degree sexual assault, sec. 940.225(1)(b), Stats., and armed robbery, sec. 943.32(2), Stats., specifically require the defendant to have committed the crime "by use or threat of use of a dangerous

Q.  And what was he doing—where was—where was this object that you thought was a gun?

A.  In his hand pointed towards me.

Q.  Pointed towards you? Was this from what you could see—I realize it was dark but from what you could see was the object in his hand—the passenger's hand that was pointed towards you, was it long or was it small?

A.  It was small.

Q.  And it looked like a gun to you?

A.  Yes.

11

weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a dangerous weapon."[3]

Hubanks argues that because the victim had been blindfolded, neither he nor his confederate had reason to believe that the victim could see the pipe or would consider it to be a gun. He notes that the evidence fails to show that either of them had a gun or that they verbally threatened to use one. He urges that the record is devoid of proof that either of them intended to intimidate the victim with a weapon, real or simulated. Hubanks concludes that because the "dangerous weapon" element of both crimes was not supported by the evidence, the four sexual assault charges and the robbery charge must be dismissed.

The statute provides that use of an article in a manner which leads a victim to reasonably believe that it is a dangerous weapon is sufficient to prove a violation. Thus, the issue here is whether there is sufficient evidence for the jury to have determined that Hubanks and his accomplice used the pipe in a manner that could lead the victim reasonably to believe it was a gun. This court will not substitute its own judgment for that of the jury unless "the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990).

We reject Hubanks' argument because his and his accomplices' alleged lack of purpose or intent to make

[3] Section 943.32(2), Stats., provides slightly different wording: ". . . to lead the victim reasonably to believe *that it is* a dangerous weapon" (emphasis added).

the victim believe that they were armed is irrelevant. The crucial issue is the victim's subjective belief or perception of the danger. In *State v. Witkowski*, 143 Wis. 2d 216, 219, 420 N.W.2d 420, 421 (Ct. App. 1988), an attempted armed robbery case, we said: "If the victim's belief that the defendant was armed was reasonable, that is enough." While in most cases the actor's purpose is illustrated by threat or simulated weapon used to intimidate or frighten the victim, that purpose is not an element of the crime. The focus is on the victim's subjective assessment of the facts and her reasonable conclusion that she is in danger. *See State v. Hopson*, 122 Wis. 2d 395, 401-02, 362 N.W.2d 166, 169 (Ct. App. 1984).

In this case, although the attacker never stated that he had a weapon, he did threaten the victim by stating, "Don't make me have to kill you." This threat, along with the victim's testimony that the attacker's accomplice appeared to have a weapon pointed in her direction, could lead the jury to find that the victim reasonably believed that the attacker was effecting the assaults and robbery by the use of a dangerous weapon. The finding was not against the great weight and clear preponderance of the evidence and is sufficient to support the convictions.

## II. ADMISSION OF DEFENDANT"S REFUSAL TO PROVIDE A VOICE SAMPLE

Hubanks argues that the court erred in ordering a voice exemplar and in denying his request for an in-court voice lineup. He also contends that the jury instructions were misleading and prejudicial and that the instructions and the State's repeated reference to his refusal to give a voice sample prejudiced his Fifth Amendment privilege against self-incrimination.

13

At trial, the State moved for an in-court voice identification of Hubanks. The State wanted Hubanks to repeat the same words he had spoken at the police lineup. Hubanks objected to the State's motion because, he asserted, to speak at trial would be a violation of his privilege against self-incrimination. Additionally, he argued, the fact that he would be directed to speak the words spoken in the lineup would be prejudicial. He advised the court that he did not intend to testify and that he would remain silent during the entire trial.

In the event that the court required him to speak, Hubanks argued that the jury should be instructed that his "declination to make a statement here in court may be used by the jury for whatever weight they think it deserves" and not that the declination could be used as evidence of guilt. As an alternative to requiring him alone to speak the words of the attacker, Hubanks proposed that the court allow a six-person voice lineup.

After arguments by counsel, the trial court ordered Hubanks to give an in-court voice exemplar, using the words of the attacker, and denied the defendant's request for an in-court lineup. The court instructed the jury both during the State's case in chief and during final jury instructions, that Hubanks had declined to give a voice sample and that the jury could "give that declination the weight [they] think it deserves." Hubanks now challenges the propriety of the court's order, the manner in which the jury was informed of his refusal to give a voice sample, and the denial of his request for an in-court voice lineup.

## A. Propriety of the Court's Order

Hubanks argues that the court erred in ordering an in-court voice sample, using the words spoken by the attacker. He contends that such an order is violative of his Fifth Amendment privilege against self-incrimina-

tion because the words to be spoken were testimonial in nature and prejudicial.

The Fifth Amendment[4] does not enumerate the ways in which a person may not be compelled to be a witness against himself. However, the United States Supreme Court has held that the privilege does not protect a suspect from compulsion to produce "real or physical evidence." *Pennsylvania v. Muniz*, 496 U.S. 582, 588-89 (1990). The privilege against self-incrimination protects a defendant from " 'being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.' " *Id.* at 589 (quoting *Schmerber v. California*, 383 U.S. 757, 761 (1966)).

In *United States v. Wade*, 388 U.S. 218 (1967), the Supreme Court held that compelling a bank robbery suspect to give a voice sample in a lineup was not violative of the Fifth Amendment even though the suspect was required to repeat the words that the bank robber had used. The Court stated that the accused was not compelled to "utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt." *Id.* at 222-23.

In *Pennsylvania v. Muniz*, 496 U.S. at 597-98, the Supreme Court explained: "[T]he cases upholding compelled writing and voice exemplars did not involve situations in which suspects were asked to communicate any personal beliefs or knowledge of facts, and therefore the suspects were not forced to choose between truthfully or falsely revealing their thoughts."

---

[4] The Fifth Amendment to the United States Constitution provides in part: "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."

Likewise, in this case, the court-ordered voice sample was to be used only for the purposes of voice identification. Hubanks was not asked to reveal his thoughts or speak his guilt. Rather, the words he was to speak had been chosen for him, and therefore, did not compel him to reveal the "contents of his mind." *See Id.* at 598 (quoting *Doe v. United States*, 487 U.S. 201, 210 n.9 (1988)).

Hubanks argues that the particular words that he was ordered to speak, however, were inherently testimonial because they were non-neutral, content-laden, and prejudicial. Specifically, Hubanks argues that one of the sentences had not yet been heard by the jury,[5] and therefore, through his voice sample, the jury would have heard the evidence for the first time.

We decline to address the impact that this situation may or may not have had on Hubanks' Fifth Amendment claim. Hubanks did not raise this issue with the trial court through a proper objection.[6] *See* sec. 805.11, Stats. Had the objection been raised before the trial court, potential problems could have been avoided in any number of ways. For example, the court could have

---

[5] The victim had testified only that the attacker had said, "Don't make me have to kill you." Well after the court informed the jury of Hubanks' refusal to give the voice sample, a police detective who had witnessed the original lineup testified that each of the men in the lineup had been asked to repeat two sentences, "Do you want to feel good or die," and "Don't let me have to kill you."

[6] Although both defense counsel and the State argued the issue at length, no mention was made by either party that one of the two statements had not yet been offered into evidence. The main thrust of Defendant's objection to giving a voice sample was that he wished to remain silent, and that the words to be used were unduly suggestive.

deleted that one sentence from the ordered voice sample, or could have allowed the State to properly elicit the statement from a witness before directing Hubanks to speak the words. However, Hubanks first raised this issue on appeal and clearly did not base his objection, and refusal to speak, on this alleged defect.[7] Furthermore, because Hubanks did not submit to the order for the voice sample, the jury never heard the allegedly inadmissible statement. Hence, we will not entertain a claim of prejudicial impact upon the jury.[8]

---

[7] While it is true that the waiver rule is a flexible one that allows this court to make exceptions in cases of "compelling circumstances," we decline to do so in this instance. *See State v. Baldwin*, 101 Wis. 2d 441, 445-46, 304 N.W.2d 742, 746 (1981) (court did not apply the waiver rule where the matter at issue involved federal and state constitutional questions that went "directly to the integrity of the fact finding process"). We find no compelling circumstances in this case because we believe that the defendant's decision not to comply with the court's order was in no way affected by the potential inadmissibility of one of the two sentences, and because the defendant ultimately did not speak the sentence before the jury.

[8] Although we do not address the issue of potential prejudice resulting from a situation in which a defendant is ordered to speak the words allegedly used in the crime, we feel it is appropriate at this time to provide the following guidance. We have held in this opinion that ordering a defendant to submit to an in-court voice sample by merely repeating or reading the words allegedly used in a crime does not violate the defendant's privilege against self-incrimination. However, that is not to say that such a voice sample will be appropriate in every situation. There may be situations where forcing a criminal defendant to utter the words of the crime would be so inherently prejudicial that a conviction would warrant reversal. If an in-court voice sample is sought for identification purposes, problems of prejudice can be easily avoided by allowing the defendant to read a neutral passage.

17

We hold that specific words that a court orders a defendant to speak before the jury, for identification purposes only, do not require revelation of the contents of the mind to impart an admission of guilt or to provide substantive evidence of guilt, and therefore, are not testimonial. We conclude that the trial court's requiring an accused to recite written matter, with the accompanying jury charge that the content of the statement should be limited to purposes of identification, is consistent with the privilege against self-incrimination. However, we suggest that the manner in which the in-court voice sample is to be taken, and the content of the qualifying instruction, be addressed and resolved by a motion *in limine* or another appropriate manner before presentation to the jury.

## B. Informing the Jury of Defendant's Refusal to Provide a Voice Sample

Hubanks contends that the jury instructions, both during the State's case-in-chief and also during final jury instructions, were misleading and prejudicial, and that the instructions and the State's repeated reference to his refusal to give a voice sample prejudiced his Fifth Amendment privilege against self-incrimination.

After the court granted the State's motion for Hubanks' voice sample, the jury was charged:

> Ladies and gentlemen, the Court has been asked by the State to request the Defendant to give a voice sample by stating the words that the . . . [victim] testified were said on the night in question for purposes of testing her capacity to identify the voice as the same one she heard on that night and to that request the Defendant has declined to give that voice

sample and you, the jury, may give that declination the weight you think it deserves.

The court restated this instruction in its charge at the close of the trial in conjunction with an instruction which informed the jury that the defendant had an absolute constitutional right not to testify.[9] *See* Wis J I—Criminal 315.[10] During closing arguments, the State made repeated reference to Hubanks' refusal to give a voice sample.

The United States Supreme Court has held: "the Fifth Amendment . . . in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). Any such comment on a defendant's silence constitutes an impermissible penalty for exercising one's constitutional privilege. *Id.* at 614.

---

[9] At the close of trial, the court delivered the following charge:

> Now, a Defendant in a criminal case has the absolute Constitutional right not to testify. The Defendant's decision not to testify must not be considered by you in any way and must not influence you in your verdict; however, the Defendant was requested to give a voice sample by stating the words that the . . . [victim] testified were said on the night in question for purposes of testing her capacity to identify the voice as the same one she heard on that night. The Defendant has declined to give that voice sample by stating those words and you may, therefore, give that declination the weight you think it deserves in considering the guilt or innocence of the Defendant.

[10] "A defendant in a criminal case has the absolute constitutional right not to testify. The defendant's decision not to testify must not be considered by you in any way and must not influence your verdict in any manner." Wis J I—Criminal 315.

19

In this opinion, we have held that the Fifth Amendment does not prohibit a court from compelling a criminal defendant to submit to a voice sample for purposes of identification. Thus, comment by the State, and instructions by the court, that a defendant has refused to comply with such a request, and that the refusal can be used as evidence of guilt, is not violative of a defendant's privilege against self-incrimination.

Hubanks contends that the repeated references by the State, and the instructions from the trial court, overwhelmed the court's instruction that a criminal defendant has an absolute constitutional privilege not to testify. We disagree. Each of the State's references to the defendant's refusal was made in a context which clearly dealt with Hubanks' refusal to give an in-court voice sample—not his refusal to testify.[11] The trial court informed the jury that a criminal defendant has an absolute constitutional right not to testify. We presume that a jury properly follows the instructions given by the court. *State v. Pitsch*, 124 Wis. 2d 628, 645 n.8, 369 N.W.2d 711, 720 n.8 (1985). Because the court adequately charged the jury, and because the State did not improperly refer to Hubanks' choice to not testify, we reject his argument that his privilege against self-incrimination was undermined.

In addition to challenging the jury instructions as violative of his constitutional privilege, Hubanks also contends that the manner in which the jury was informed of his refusal to give a voice sample was

---

[11] Each reference was accompanied by qualifying phrases, such as: "his declination to utter words"; "declining . . . to give a voice sample"; "his refusal to give a voice sample"; or some reference to his distinctive voice.

unfairly prejudicial and should have been excluded under sec. 904.03, Stats.[12] In reviewing a trial court's decision on the admissibility of evidence, the question is not whether we agree with the trial court's decision, but whether the trial court appropriately exercised its discretion. *State v. Baldwin*, 101 Wis. 2d 441, 455, 304 N.W.2d 742, 750 (1981).

Evidence is unfairly prejudicial if it has a tendency to influence the outcome of the proceeding by improper means. *Id.* Such evidence may appeal to the jury's sense of sympathy, horror, or instinct to punish, or in some other way cause the jury to base its decision on matters other than the true issues of the case. *Lease America Corp. v. Insurance Co. of North America*, 88 Wis. 2d 395, 401, 276 N.W.2d 767, 770 (1979).

Evidence of Hubanks' refusal to speak for the purposes of voice identification was not unfairly prejudicial. We agree with the trial court's assessment that any unfair prejudice that may have resulted from the defendant speaking the words as ordered could be avoided with proper admonitory charges to the jury. However, because Hubanks declined to speak those words, the court simply instructed the jury of this fact in a non-inflammatory manner. We conclude that the court properly exercised its discretion.

---

[12] Section 904.03, Stats. provides:

**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Hubanks also argues that the evidence of his refusal to comply with the court-ordered voice sample should have been excluded under sec. 904.03, Stats., because such evidence misled the jury. Hubanks contends that the instruction unfairly characterized his response to the court's order because it did not inform the jury that he had requested to speak in an in-court lineup. However, because Hubanks neither objected to this characterization when the evidence was introduced at trial, nor submitted an alternative instruction, we deem this issue waived, and decline to address it. *See* secs. 901.03(1)(a) and 805.13(3), Stats.

## C. Denial of Defendant's Request for an In-Court Voice Lineup

As an alternative to the in-court voice identification requested by the State, in which Hubanks alone would be compelled to speak, Hubanks requested that he be allowed to participate in an in-court voice lineup. The court denied the request and ordered Hubanks to give a voice sample in court. Hubanks now contends that the court abused its discretion in denying his request for the in-court voice lineup.[13]

---

[13] We decline to adopt the State's argument that Hubanks cannot base a claim of error on this issue because he himself has invited the error. The State reasons that because Hubanks presented the court with a "first choice"—to remain silent and to have the court instruct the jury that they could use his declination to speak for whatever weight they thought it deserved—and a "second choice"—to submit to an in-court lineup—Hubanks cannot now complain that the court adopted his first choice and not his second.

We think, however, that a more accurate reading of the record indicates that Hubanks' first choice was to have the court *deny* the State's request for an in-court voice sample. In the event that the court ordered the voice sample and denied his request for

We review a trial court's decision on a defendant's motion for an in-court lineup at trial for abuse of discretion. *State v. Sibley*, 151 Wis. 2d 228, 229, 444 N.W.2d 391, 391 (Ct. App. 1989). Although *Sibley* involved a request for an in-court visual lineup, we conclude that the abuse of discretion standard is equally applicable to a request for an in-court voice lineup. This court will not question the trial court's ruling unless the abuse of discretion resulted in a procedure that was " 'so unnecessarily suggestive and conducive to irreparable mistaken identification' as to amount to a denial of due process of law." *Id.* at 230, 444 N.W.2d at 392 (citations omitted).

In *Sibley*, this court determined that the trial court did not abuse its discretion in denying the defendant's request for an in-court lineup. We explained that the trial court had decided that the lineup procedure "was undesirable because it would be unpredictable and difficult to control, because a photograph of the line-up could not be taken as needed for review, and because the defendant had failed to show why an in-court line-up was of 'great necessity' or why cross-examination would not suffice to test the state's identification testimony." *Id.* at 231, 444 N.W.2d at 392.

Similarly, in this case, not only would the same difficulties be present as in *Sibley*, but the defendant's request for a procedure, involving several men standing behind a screen and speaking, would have compounded the difficulties ordinarily encountered in a visual in-court lineup. It is precisely because of these difficulties

an in-court lineup, Hubanks explained that he would refuse to speak, and, in an attempt to minimize his losses, suggested a charge to assist the court in framing the jury admonition that would inevitably be given.

that in-court lineups are seldom done. We find no abuse of discretion in the trial court's denial of defendant's request for an in-court voice lineup.

In summary, we conclude that the court properly ordered defendant to submit to a voice sample and that the order did not compromise defendant's privilege against self-incrimination; the jury was properly informed of the defendant's refusal to give an in-court voice sample; and, the court did not abuse its discretion in denying defendant's request for an in-court voice lineup.

## III.  EFFECTIVE ASSISTANCE OF COUNSEL

Hubanks maintains that his Sixth Amendment[14] right to effective assistance of counsel was violated because his attorney failed to investigate witnesses who could have supplied exculpatory testimony and who would have testified to his character, and because his attorney failed to sufficiently address the dangerous weapon element of the crimes during final arguments.

To prevail in a claim of ineffective assistance of counsel, a defendant must prove that his counsel's

---

[14] United States Constitution Amendment VI provides in part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Wisconsin Constitution Article I, sec. 7 provides in part: "In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel . . .." If the representation by counsel meets the requirements of the federal constitution it passes the muster of the state constitution. *State v. Marty,* 137 Wis. 2d 352, 356-58, 404 N.W.2d 120, 122-23 (Ct. App. 1987) (however, the analysis of whether the defendant has been prejudiced as a result of deficient representation may differ under the State and federal constitutions).

actions constituted deficient performance, and that the deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S 668, 687 (1984). A reviewing court may reverse the order of the two tests or dispose of the deficient performance test if the defendant has failed to establish prejudice. *dd Id.* at 697.

On appeal, the question of effective assistance of counsel is one of both fact and law. *Id.* at 698. The trial court's findings of fact will not be reversed unless clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 634, 369 N.W.2d 711, 714 (1985). However, questions of whether counsel's actions were deficient, and consequently, whether they prejudiced the defense, are questions of law to be determined independently by the reviewing court. *Id.* at 634, 369 N.W.2d at 715.

Counsel is presumed to have provided adequate assistance, therefore, the burden of proof is on the defendant to establish that counsel's performance was deficient. *Strickland*, 466 U.S. at 689. The defendant must show that counsel's quality of representation fell below that of an ordinarily prudent lawyer who is skilled and versed in criminal law and privately retained. *State v. Brooks*, 124 Wis. 2d 349, 352, 369 N.W.2d 183, 184 (Ct. App. 1985). The standard by which this court assesses the quality of counsel's performance is whether such performance was reasonable under the circumstances of the particular case. *Id.*

To establish that the attorney's performance was prejudicial, the defendant must show a reasonable probability that, in light of counsel's errors, the "trial cannot be relied on as having produced a just result," *Strickland*, 466 U.S. at 686, and that, in the absence of

25

counsel's errors, the "prospect of conviction would have been substantially less," *State v. Marty*, 137 Wis. 2d 352, 364-65, 404 N.W.2d 120, 125 (Ct. App. 1987) (quoting *State v. Dyess*, 124 Wis. 2d 525, 546, 370 N.W.2d 222, 233 (1985)).

As evidence of his counsel's deficient performance, Hubanks testified at the post-conviction hearing that his counsel failed to investigate two potential witnesses. As a result, Hubanks argues, Wiley Stubblefield and Jimmy Wade were not called to testify at trial on his behalf. Stubblefield allegedly would have been called to corroborate Hubanks' defense, and both Stubblefield and Wade would have been character witnesses. However, in his post-conviction hearing testimony, Hubanks' trial counsel flatly denied that Hubanks told him of these potential witnesses or of any other corroborating witnesses or character witnesses.

Hubanks argues that Jimmy Wade could have been a character witness. Wade's hearing testimony was that Hubanks was not a violent man and would not rob and assault a girl. However, Wade admitted that he knew Hubanks had a criminal record and sometimes was involved in "little scrapes, fights, stuff like that . . .. "

Hubanks claimed that Stubblefield would have corroborated his version of the events of the night in question. Stubblefield allegedly would have testified that Hubanks had obtained the car keys and jewelry from a man known by the name "Red." According to Hubanks' hearing testimony, Hubanks had traded lactose, which "Red" believed to be cocaine, for the car keys and jewelry. However, Hubanks' trial counsel testified that this was not the story that Hubanks had told him. Trial counsel testified that Hubanks had claimed that he and an accomplice were attempting to steal the car and found

the jewelry inside it, but had urged counsel not to contact the accomplice.

The court found that Hubanks had not been denied effective assistance of counsel. Although the trial court did not make·specific findings of fact, we may assume on appeal that such findings of fact were made implicitly in favor of its decision. *See In re Estate of Villwock*, 142 Wis. 2d 144, 149, 418 N.W.2d 1, 3 (Ct. App. 1987). In determining whether Hubanks had informed his trial counsel of potential witnesses, the trial court was required to make a finding of fact, and we will not reverse that finding unless clearly erroneous. *See Pitsch*, 124 Wis. 2d at 634, 369 N.W.2d at 714-715.

From the trial court's conclusion that Hubanks was not denied adequate assistance of counsel, we assume, by implication, that the trial court did not believe Hubanks and did believe his trial counsel. We conclude that this finding was not clearly erroneous because the issue is one of credibility of the witnesses—Hubanks testified that he told his counsel of the existence of potential witnesses, his trial counsel testified that Hubanks did not tell him of the potential witnesses. "The credibility of the witnesses, including the defendant's . . . is exclusively for the trier of fact." *State v. Wyss*, 124 Wis. 2d 681, 694, 370 N.W.2d 745, 751 (1985).

As further evidence of trial counsel's allegedly deficient performance Hubanks argues that counsel neglected to argue that the evidence did not prove the dangerous weapon element of the offense. Counsel, however, testified that his strategy was to rely on a mistaken identity defense. Counsel believed that arguing insufficiency of proof as to the dangerous weapon element would have undercut his mistaken identity position.

Trial counsel may select a particular defense from the available alternative defenses, *State v. Felton*, 110 Wis. 2d 485, 501-03, 329 N.W.2d 161, 169 (1983) and need not undermine the chosen defense by presenting the jury with inconsistent alternatives, *Lee v. State*, 65 Wis. 2d 648, 654-55, 223 N.W.2d 455, 458-59 (1974). Even if it appears, in hindsight, that another defense would have been more effective, the strategic decision will be upheld as long as it is founded on rationality of fact and law. *Felton*, 110 Wis. 2d at 502, 329 N.W.2d at 169.

At the time of trial, counsel believed that arguing the insufficiency of the evidence on the dangerous weapon element would have undermined the defense of mistaken identity. We conclude that counsel's course of action was based on a reasonable choice of strategy.

In conclusion, we determine that counsel's performance was not deficient, and therefore, Hubanks was not denied effective assistance of counsel.

## IV. NEW TRIAL IN THE INTEREST OF JUSTICE

Invoking sec. 752.35, Stats., Hubanks asserts he is entitled to a new trial in the interest of justice because the real controversy was not fully tried. He argues that his substantial defense never got before the jury—that defense being the midnight exchange with "Red" in which he traded lactose for the jewelry and car. However, the mistaken identity defense, which was plausible and had evidentiary support, was submitted to the jury.

This court may exercise its power of discretionary reversal where the real controversy has not been fully

tried. *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770 (1985). However, the statute was not intended to vest this court with power of discretionary reversal to enable a defendant to present an alternative defense at a new trial merely because the defense presented at the first trial proved ineffective. *Cf. Buel v. La Crosse Transit Co.,* 77 Wis. 2d 480, 496-97, 253 N.W.2d 232, 239-40 (1977) (statute was not designed to allow discretionary reversal to enable plaintiff to sue under a different theory). We conclude that the case was fully tried, and therefore, we decline to grant a discretionary reversal.

*By the Court.*—Judgment and order affirmed.